**William M. HANLIN, Plaintiff,**

v.

**THE UNITED STATES, Defendant.**

**No. 97–751 C.**

United States Court of Federal Claims.

Nov. 1, 2001.

Kenneth M. Carpenter, Carpenter, Chartered, Topeka, KS, for plaintiff.

Mark L. Josephs, with whom were Acting Assistant Attorney General Stuart E. Schiffer, Director David M. Cohen, Assistant Director Donald E. Kinner, Department of Justice, Washington, D.C., Martin J. Sendek, Office of General Counsel, Department of Veterans Affairs, for defendant.

## OPINION

WIESE, Judge.

Plaintiff is an attorney who successfully represented a veteran seeking to recover past-due benefits from the Department of Veterans Affairs (VA). Plaintiff is now suing here, pursuant to an implied-in-fact contract theory, to recover his attorney's fee, which he claims the VA had agreed, but failed, to withhold from the amount of past-due benefits awarded the veteran. Defendant denies the existence of any contract.

The case is now before the court on cross-motions for summary judgment.[1] Oral argument was heard on October 25, 2001. We decide in defendant's favor.

## FACTS

On May 29, 1991, plaintiff's law firm entered into a contract to provide legal representation to John E. Reaves, a military veteran, in connection with Mr. Reaves' claim for past-due benefits before the Veterans Administration—now called the Department of Veterans Affairs (the Department). As part of that contract, and in a separate fee agreement dated the same day, Mr. Reaves agreed to a contingency fee arrangement in which the law firm was to receive 20% of any past-due veterans benefits awarded to him as a result of the firm's successful prosecution of his claim.

The original fee agreement was amended approximately four years later. In the second fee agreement, dated January 17, 1995, Mr. Reaves authorized the Secretary of Vet-

erans Affairs to withhold 20% of any past-due benefits awarded, and to make direct payment of those funds to plaintiff's law firm. The direct payment of an attorney's fee from an award of past-due veterans benefits is authorized by 38 U.S.C. § 5904(d) (1994 & Supp. V 1999) and that section's implementing regulation, 38 C.F.R. § 20.609(h) (2001).

On March 10, 1995, plaintiff forwarded the second fee agreement to both the Department's regional office in Montgomery, Alabama and the Board of Veterans' Appeals (the Board) in Washington, D.C. By letter dated April 7, 1995, the Board acknowledged receipt of the fee agreement. The Board's letter also informed plaintiff that the Montgomery regional office would withhold 20% of any past-due benefits awarded to Mr. Reaves. The letter concluded by stating that if such benefits were awarded to Mr. Reaves, the Board would, at that point, review the parties' fee agreement for compliance with relevant statutory and regulation provisions prior to sending plaintiff his fee.[2]

In July 1997, the Department determined that Mr. Reaves was entitled to veteran's pension benefits and, accordingly, awarded him $63,835. Rather than withholding 20% of these funds for legal fees, however, the Montgomery regional office released the entire amount to Mr. Reaves.

The regional office notified Mr. Reaves of its error by letter dated August 5, 1997. The letter further explained that "the fee agreement on file—the one that plaintiff had sent to the Department in March 1995—would

---

1. At an earlier stage in this lawsuit, this court issued an opinion dismissing plaintiff's complaint for lack of jurisdiction. *Hanlin v. United States*, 43 Fed.Cl. 34 (1999). The decision was based primarily on the text of 38 U.S.C. § 511(a) (1994), which provides in relevant part that "the Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans. . . ." Exclusive jurisdiction over plaintiff's claim, we concluded, was vested in the Secretary of the Department of Veterans Affairs. 43 Fed.Cl. at 37–38.

This ruling was reversed on appeal. *Hanlin v. United States*, 214 F.3d 1319 (Fed.Cir.2000). The court of appeals concluded that "[a]lthough Mr. Hanlin's claim arises under ... 'a law that affects the provision of benefits' within the meaning of 38 U.S.C. § 511(a) ... there is no lan-

guage [in that section] requiring an attorney in Mr. Hanlin's position to file a claim for fees ... with the VA or to otherwise pursue a remedy through the VA administrative process." *Id.* at 1321. Accordingly, Mr. Hanlin's claim alleging a breach of contract by the Secretary could be pursued in this court.

2. As the April 7, 1995 letter indicated, the Board has the authority, on its own motion, to review the reasonableness of any fee charged. 38 U.S.C. § 5904(c)(2) (1994 & Supp. V 1999); 38 C.F.R. § 20.609(i) (2001). However, the Department's regulations define "fees which total no more than 20 percent of any past-due benefits awarded" as presumptively reasonable. 38 C.F.R. § 20.609(f) (2001).

still be reviewed by the Board for compliance with the applicable statute and regulations. Upon completion of that review, the letter continued, Mr. Reaves would be notified of the amount that he was required to repay [his] attorney." The Montgomery regional office concluded its letter by stating:

> Under the circumstances, we are constrained to follow a 1992 precedent opinion of the VA [Veterans Administration] General Counsel (O.G.C.Prec.27–92) in which it was held that VA has no legal authority to pay attorney fees when payment of the complete amount of past-due benefits has been made to the claimant.

Although the letter was addressed to Mr. Reaves, plaintiff also received a copy.

Plaintiff filed his complaint in this court on November 3, 1997. The essence of the complaint is that a fee agreement executed in accordance with statutory authority (meaning in compliance with 38 U.S.C. § 5904(d)), and thereafter accepted by the Secretary, gives rise to an implied-in-fact contract and, as such, is enforceable in this court. Defendant, as we have said, denies the existence of any contract.

### DISCUSSION

■ An implied-in-fact contract, the Supreme Court has explained, is "an agreement . . . founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Baltimore & Ohio R.R. v. United States,* 261 U.S. 592, 597, 43 S.Ct. 425, 67 L.Ed. 816 (1923). Thus, as the Restatement of Contracts further explains, the distinction between an express contract and an implied-in-fact contract "involves . . . no difference in legal effect, but lies merely in the mode of manifesting assent." Restatement (Second) of Contracts § 4 cmt. a (1979). And, "[j]ust as assent may be manifested by words or other conduct . . . so intention to make a promise may be manifested in language or by implication from other circumstances, including course of dealing or usage of trade or course of performance." *Id.*

■ Except, then, for the absence of a writing memorializing the parties' agreement, an implied-in-fact contact does not differ from an express contract. Like an express contract, therefore, the formation of an implied-in-fact contract requires a bargained-for promissory exchange. Specifically, plaintiff must show "mutuality of intent to contract, offer and acceptance, and that the officer whose conduct is relied upon had actual authority to bind the government in contract." *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1575 (Fed.Cir.1984).

■ Plaintiff contends that he has satisfied these requirements. His argument, in substance, is that a fee agreement executed under the authority of the enabling statute and meeting the criteria enumerated in regulation, becomes a contract when approved by the Secretary. We do not share this view.

As indicated, the starting point of plaintiff's argument is 38 U.S.C. § 5904(d), the statute that provides the Secretary with the authority to direct payment of an attorney's fee out of an award of past-due benefits. The statute reads in relevant part as follows:

> (3) To the extent that past-due benefits are awarded in any proceeding before the Secretary, the Board of Veterans' Appeals, or the United States Court of Appeals for Veterans Claims, the Secretary may direct that payment of any attorneys' fee under a fee arrangement described in paragraph (1) of this subsection [authorizing a fee agreement not to exceed "20 percent of the total amount of any past-due benefits"] be made out of such past-due benefits.

38 U.S.C. § 5904(d)(3).

In the implementation of this grant of authority, the Secretary promulgated a regulation that reads in pertinent part as follows:

> Rule 609. Payment of representative's fees in proceedings before Department of Veterans Affairs field personnel and before the Board of Veterans' Appeals.
>
> . . . .
>
> (h) *Payment of fees by Department of Veterans Affairs directly to an attorney-at-law from past-due benefits.*
>
> (1) Subject to the requirements of the other paragraphs of this section . . . the claim-

ant or appellant and an attorney-at-law may enter into a fee agreement providing that payment for the services of the attorney-at-law will be made directly to the attorney-at-law by the Department of Veterans Affairs out of any past-due benefits awarded as a result of a successful appeal to the Board of Veterans' Appeals or an appellate court or as a result of a reopened claim before the Department following a prior denial of such benefits by the Board of Veterans' Appeals or an appellate court. Such an agreement will be honored by the Department only if the following conditions are met:

(i) The total fee payable (excluding expenses) does not exceed 20 percent of the total amount of the past-due benefits awarded,

(ii) The amount of the fee is contingent on whether or not the claim is resolved in a manner favorable to the claimant or appellant, and

(iii) The award of past-due benefits results in a cash payment to a claimant or an appellant from which the fee may be deducted.

Board of Veterans' Appeals: Rules of Practice, 38 C.F.R. § 20.609(h) (2001).

As plaintiff sees the situation, the statute, together with its implementing regulation, establish, first of all, the Secretary's authority to act, and, secondly, his intention to become legally bound. Only the first part of this position is correct.

There can be no doubt that 38 U.S.C. § 5904(d) authorizes the Secretary to direct payment of an attorney's fee out of past-due benefits where the fee arrangement satisfies prescribed criteria. The statute says as much. However, the problem here does not concern the Secretary's authority to act. Rather, the issue is whether the Secretary's acceptance and subsequent approval of a qualifying fee agreement can be construed as a promissory undertaking on his part. Plaintiff sees evidence of a promise of payment in the regulation. We do not.

Granted, the regulation does state that a fee agreement meeting the requirements enumerated in the regulation "will be hon-ored by the Department." However, not every statement of intention may be considered promissory in character. Whether a promise is intended depends as much upon the nature of the parties' dealings as upon the words themselves. Several reasons persuade us that there was no promise here.

To start with, the transaction in question does not involve expectations grounded in a course of dealing or shaped by custom or practice or usages of trade. There are, therefore, no background facts to draw upon that would permit us to infer that the Secretary intended a promise even though the regulation does not say so. The whole of the Secretary's intention is displayed in the words of the regulation, and no words of promissory character appear there. Moreover, it is this specific absence from the regulation of any words of promissory import—when the regulation could have been written otherwise had a promise been intended—that compels us to say that no promise may be inferred. The omission must be seen as deliberate.

In *National By–Products, Inc. v. United States,* 186 Ct.Cl. 546, 405 F.2d 1256, 1264 (1969), the court stated that "for a government representation … to be binding as a contractual obligation, it must have been in the form of an undertaking rather than a mere prediction or statement of opinion or intention." The statement is a recognition of the fact that when the Government intends to contract, it generally does so through the formalities of a written agreement. We conclude that the regulation's representation that a qualifying fee agreement "will be honored by the Department" are words of intention, but not commitment.

Nor may this conclusion be avoided by claiming that the Secretary should be precluded from denying the existence of a promise because the words of the regulation, reasonably read, would support such a conclusion. Although contract law recognizes that a party may be held to have manifested assent (*i.e.*, to have made a promise) even when not intending to do so, such a result is reached only where a party "knows or has reason to know that the other party may infer from his conduct that he assents." Re-

statement (Second) of Contracts § 19(2) (1979). In other words, "there must be either intentional or negligent creation of an appearance of assent." *Id.* cmt. c.

We do not encounter such a situation here. There is no basis for saying that the Secretary knew or should have known that plaintiff would construe the regulation as inviting the submission of an offer (*i.e.*, the attorney's fee agreement) whose approval by the Secretary would then constitute an acceptance. The fact that the regulation refers to only one agreement—the fee arrangement between the attorney and his client—should have been enough to inform plaintiff that the regulation intended to recognize no contractual engagement other than the one specifically referred to. After all, it would have been easy enough for the Secretary to have added words of contract formation to the regulation had that been the intent.

## CONCLUSION

On the basis of the reasons stated in this opinion, we conclude that plaintiff has failed to establish the existence of an implied-in-fact contract. There is, therefore, no ground upon which relief may be allowed. Accordingly, defendant's motion for summary judgment is granted and plaintiff's cross-motion is denied. The Clerk is directed to enter judgment dismissing the complaint. No costs.