**William M. HANLIN, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 02–5055.

United States Court of Appeals,
Federal Circuit.

Jan. 6, 2003.

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, KS, argued for Plaintiff–Appellant.

Mark L. Josephs, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for Defendant–Appellee. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General, and David M. Cohen, Director. Of counsel on the brief was Martin J. Sendek, Office of General Counsel, Department of Veterans Affairs, of Washington, DC.

Before MICHEL, Circuit Judge, PLAGER, Senior Circuit Judge, and LOURIE, Circuit Judge.

Opinion for the court filed by Circuit Judge MICHEL. Concurring opinion filed by Senior Circuit Judge PLAGER.

MICHEL, Circuit Judge.

Plaintiff William M. Hanlin, an attorney who represents veterans, appeals the No-vember 1, 2001 decision of the United States Court of Federal Claims granting the government's motion for summary judgment in this action for breach of contract and denying Hanlin's cross-motion. *Hanlin v. United States*, 50 Fed. Cl. 697 (2001). The Court of Federal Claims held that, contrary to plaintiff's sole theory of recovery, no implied-in-fact contract arose between Hanlin and the government. As a result, Hanlin could not recover his attorney fees, which should have been paid directly to him from his client's past-due benefit award, but were not, after he successfully represented a veteran. We affirm the Court of Federal Claims' decision that there was no implied-in-fact contract.

## BACKGROUND

Hanlin entered into an agreement with a veteran, John Reaves, to provide legal representation for Reaves before the Department of Veterans Affairs ("DVA") and the United States Court of Appeals for Veterans Claims. The agreement provided that Reaves would pay as attorney fees 20% of any recovery. In the agreement Reaves "specifically authorize[d] the Secretary of Veterans Affairs to make direct payment of the attorney's fee to [his] attorney in the event of a favorable decision." (J.A. 71.)

Hanlin sent the fee agreement to the Board of Veterans' Appeals ("Board") and a regional office of the DVA. Counsel to the Chairman of the Board wrote to Hanlin acknowledging receipt of the fee agreement. Counsel also stated that instruction had been given to the regional office to process the fee agreement for payment of the attorney fees from past-due benefits if such benefits were awarded. More specifically, Counsel indicated that in the event an award was made, the regional office

would promptly pay 80% of the award to the claimant (Reaves) and would withhold 20% of the award, and the case would then be sent to the Board for a decision as to whether the attorney fees should be paid. (J.A. 74.)

In 1997, Reaves was informed that he was entitled to past-due benefits of $63,835. However, the regional office of the DVA erroneously paid Reaves 100% of the benefits instead of withholding 20% for a Board determination regarding the attorney fees. By letter, the regional office informed both Reaves and Hanlin of this mistake and asked Reaves to pay his attorney after the Board decided the amount of the fee payment. The regional office's letter also mentioned that, under the circumstances, they were "constrained to follow a 1992 precedent opinion of the VA General Counsel (O.G.C.Prec.27–92) in which it was held that VA has no legal authority to pay attorney fees when payment of the complete amount of the past-due benefits has been made to the claimant." (J.A. 76.)

Hanlin then requested a speedy decision on his attorney fees, in reply to which the Board Counsel cited O.G.C. Prec. 27–92 but informed Hanlin that the case nevertheless would be reviewed on its own motion. (J.A. 82.) Apparently the DVA never paid Hanlin. In 1997, Hanlin filed a complaint in the Court of Federal Claims, asking the court to find the government liable for the fee as the DVA, he asserted, was contractually obligated to him directly to pay him 20% of Reaves' past-due benefits. At the first stage of this lawsuit, the

Court of Federal Claims dismissed Hanlin's complaint for lack of jurisdiction. *Hanlin v. United States*, 43 Fed. Cl. 34 (1999). That ruling was reversed by this court. *Hanlin v. United States*, 214 F.3d 1319 (Fed.Cir.2000).

On remand, the government moved for summary judgment. On November 1, 2001, the Court of Federal Claims granted the government's motion, holding that there was no implied-in-fact contract between Hanlin and the DVA. *Hanlin*, 50 Fed. Cl. at 701.

Subsequently, the United States Court of Appeals for Veterans Claims issued two decisions holding that the DVA was obligated to pay the correct person, *i.e.,* the attorney who successfully represented the veteran, even if the DVA erroneously paid all the past-due benefits to the claimant. *Snyder v. Principi*, 15 Vet.App. 285 (2001), *reh'g denied,* 16 Vet.App. 62 (2002); *Cox v. Principi*, 15 Vet.App. 280 (2001), *reh'g denied,* 16 Vet.App. 62 (2002). In *Snyder,* the court concluded that VA Gen. Coun. Prec. 27–92, which stated that the DVA had no legal authority to pay attorney fees when the complete amount of the past-due benefits had been paid to the veterans, was invalid. *Snyder,* 15 Vet.App. at 292.[1]

Hanlin filed a motion to reconsider in view of *Snyder* and *Cox.* The Court of Federal Claims denied the motion on the ground that the reconsideration request involved an argument that could have been presented earlier, but was not. Therefore, the trial court found the argument untimely and reconsideration inappropriate.

---

1. In reaching its conclusion, the *Snyder* court reasoned, *inter alia,* that (1) the DVA was bound to follow the statute and its own regulations, (2) the government's argument that there was no contractual relationship between the attorney and the DVA would not change the DVA's obligation and the attorney's right derived from the statute, and (3) the amount owed to the attorney remained undisturbed in the pension account and irrelevant to the excessive amount already paid to the veteran. *Snyder,* 15 Vet.App. at 291–95.

*Hanlin v. United States,* No. 97–751C (Fed.Cl. Nov. 27, 2001) (order denying the motion for reconsideration).

Hanlin appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

■ This court reviews decisions of the Court of Federal Claims granting summary judgment *de novo. Cook v. United States,* 86 F.3d 1095, 1097 (Fed.Cir.1996). No material facts are disputed. Therefore, summary judgment was appropriate. The parties differ only on whom it should have favored.

Hanlin argues that 38 U.S.C. § 5904(d) and 38 C.F.R. § 20.609(h) create an implied-in-fact contract between him and the DVA. Hanlin also argues that the Court of Federal Claims' holding that the regulation does not create an implied-in-fact contract renders both the statute and the regulation meaningless. After considering each of Hanlin's arguments, we agree with the court that there is no implied-in-fact contract.

### A

■ Plaintiff has the burden to prove the existence of an implied-in-fact contract. *Pac. Gas & Elec. v. United States,* 3 Cl.Ct. 329, 339 (1983), *aff'd,* 738 F.2d 452 (Fed. Cir.1984) (table). An implied-in-fact contract with the government requires proof of (1) mutuality of intent, (2) consideration, (3) an unambiguous offer and acceptance, and (4) "actual authority" on the part of the government's representative to bind the government in contract. *City of Cincinnati v. United States,* 153 F.3d 1375, 1377 (Fed.Cir.1998). Thus, the requirements for an implied-in-fact contract are

the same as for an express contract; only the nature of the evidence differs. An implied-in-fact contract is one founded upon a meeting of minds and "is inferred, as a fact, from the conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Balt. & Ohio R.R. v. United States,* 261 U.S. 592, 597, 58 Ct.Cl. 709, 43 S.Ct. 425, 67 L.Ed. 816 (1923).

Hanlin argues that 38 U.S.C. § 5904(d) and the DVA's implementation of 38 U.S.C. § 5904, found in 38 C.F.R. § 20.609(h), are promissory in character and express a promise of direct payment. The relevant part of the statute states:

(d)(2)(A) A fee agreement referred to in paragraph (1) is one under which the total amount of the fee payable to the attorney—

(i) *is to be paid to the attorney by the Secretary directly* from any past-due benefits awarded on the basis of the claim; and

(ii) *is contingent* on whether or not the matter is resolved in a manner *favorable* to the claimant.

. . .

(3) To the extent that past-due benefits are awarded in any proceeding before the Secretary, the Board of Veterans' Appeals, or the United States Court of Appeals for Veterans Claims, *the Secretary may direct that payment of any attorneys' fee* under a fee arrangement . . . be made out of such past-due benefits. In no event may the Secretary withhold for the purpose of such payment any portion of benefits payable for a period after the date of the final decision of the Secretary, the Board of Veterans' Appeals, or Court of Appeals for

Veterans Claims making (or ordering the making of) the award.

38 U.S.C. § 5904(d) (2000) (emphases added). The Secretary of the DVA promulgated regulations implementing 38 U.S.C. § 5904:

Rule 609. Payment of representative's fees in proceedings before Department of Veterans Affairs field personnel and before the Board of Veterans' Appeals.

. . .

(h) Payment of fees by Department of Veterans Affairs directly to any attorney-at-law from past-due benefits.

(1) Subject to the requirements of the other paragraphs of this section, including paragraphs (c) and (e), the claimant or appellant and an attorney-at-law may enter into a fee agreement providing that payment for the services of the attorney-at-law will be made directly to the attorney-at-law by the Department of Veterans Affairs out of any past-due benefits awarded as a result of a successful appeal to the Board of the Veterans' appeals or an appellate court or as a result of a reopened claim before the Department following a prior denial of such benefits by the Board of Veterans' Appeals or an appellate court. *Such an agreement will be honored* by the Department only if the following conditions are met:

(i) The total fee payable (excluding expenses) *does not exceed 20 percent* of the total amount of the past-due benefits awarded,

(ii) The amount of the *fee is contingent* on whether or not the claim is resolved in a manner favorable to the claimant or appellant, and

(iii) The award of past-due benefits results in a cash payment to a claim-ant or an appellant from which the fee may be deducted.

38 C.F.R. § 20.609(h) (2002) (emphases added).

■ The Court of Federal Claims disagreed with Hanlin that the statute or regulation established an implied-in-fact contract between Hanlin and the government. The court held the statute and regulation not promissory because (1) there was no course of dealing or custom or practice from which a promise by the government could be inferred; (2) there were no words of promissory character in the statute or regulation that manifested an undertaking or commitment rather than a mere instruction, prediction or intention; and (3) there was no basis to hold the government as giving assent to a contract on the ground that the Secretary knew or should have known that Hanlin would construe the regulation as an offer, which could be accepted, thereby forming a contract, by Hanlin via submission to the DVA of his fee agreement. *Hanlin*, 50 Fed. Cl. at 700–01.

We agree with the Court of Federal Claims. Subsections (d)(2)(A) and (d)(3) of 38 U.S.C. § 5904 authorize the Secretary of the DVA to pay an attorney directly from past-due benefits if the attorney enters into a proper fee agreement with a veteran. The Secretary, pursuant to 38 C.F.R. § 20.609(h), through his subordinates is to honor such a fee agreement for direct payment to the attorney. The statute and the regulation set forth the DVA's authority and obligation to act, rather than a promissory undertaking to the attorney by the DVA. The statute is a directive from the Congress to the DVA, not a promise from the DVA to the attorney. The regulation simply acknowledges the

statute and instructs DVA officials to pay such fees.

We discern no language in the statute or the regulation that indicates an intent to enter into a contract with an attorney who has reached and submitted a proper fee agreement with a veteran. Nor do we discern any past course of dealing or practice from which the DVA's intent to enter into such a contractual relationship can be inferred. To the contrary, the 1992 opinion of the VA General Counsel (O.G.C.Prec.27–92), which stated that the DVA had no legal authority to pay attorney fees when payment of the complete amount of the past-due benefits had already been made to the claimant, indicated that the DVA did not regard itself in a contractual relationship with the attorney under 38 U.S.C. § 5904 or 38 C.F.R. § 20.609(h).[2] Hanlin's argument that he reasonably expected payment directly from the DVA cannot itself establish contractual intent on the government's part.

Hanlin indeed fails to point to any evidence of offer and acceptance between him and the DVA to establish an implied-in-fact contract. Hanlin merely asserts that he made the offer to represent Reaves on a contingent fee basis and an offer was made by Reaves to have the attorney fees withheld from past-due benefits. Acceptance of these offers, according to Hanlin, constitutes acceptance of an alleged offer from the DVA "upon the execution of the written fee agreement and the filing of that fee agreement with the Agency." Hanlin's assertions only demonstrate offer and acceptance between the attorney and the veteran, not between the attorney and the DVA. The existence of a contractual relationship between the attorney and the veteran has no relevance to proving the existence of a contractual relationship between the attorney and the DVA. Hanlin fails to show DVA conduct that constitutes an offer.[3]

Hanlin has the burden to show unambiguously each of the elements of an implied-in-fact contract. Failing to show mutuality of intent and offer and acceptance, Hanlin has not met his burden to establish an implied-in-fact contract. The trial court correctly so held. We therefore need not address whether the government actor, here the Secretary of the DVA, had relevant contract authority, or whether there was consideration.

· B

Hanlin also argues that the trial court's holding that the statute and regulation do not create an implied-in-fact contract renders them meaningless.

The government responds that the lack of contractual obligation does not preclude the DVA from following the statute and regulation. To support this position, the government cites *Snyder*, in which the Court of Appeals for Veterans Claims ordered the DVA to directly pay a veteran's attorney pursuant to the statute and regulation.

It is ironic that the government cites *Snyder* for its position that the DVA will always follow the statute and regulation,

---

**2.** Although *Snyder* held VA Gen. Coun. Prec. 27–92 invalid, it found the DVA's obligation to pay derived from the statute and regulation, not contracts. *Snyder,* 15 Vet.App. at 293.

**3.** Hanlin does not allege that the correspondence between him and the DVA established an implied-in-fact contract. Even if Hanlin so alleged, the letters from the DVA did not evidence the government's intent to enter into an enforceable contract with Hanlin.

when the DVA did not initially pay the attorney in *Snyder* or ever pay in the current case. Nevertheless, the DVA may indeed be obligated to follow a statute and regulation regardless of whether it also has a contractual duty to perform. Hanlin's argument that rejection of a contractual obligation arising out of the attorney-veteran fee agreement would preclude the Secretary from acting under the statute or regulation is therefore misplaced. We reject it.

## CONCLUSION

For the reasons set forth above, we affirm the decision of the Court of Federal Claims that no implied-in-fact contract arose between Hanlin and the DVA.

*AFFIRMED.*

PLAGER, Senior Circuit Judge, concurring.

I concur in the result. The only issue presented in this appeal is whether a contract exists between the Government and the attorney who represented the veteran. I agree that, on the facts of this case, the relationship between the parties to this suit is created and governed by statute and regulation; the facts do not support a finding of the usual interactions to be expected between parties consenting to a contract. Since neither party raised or briefed the question of a recovery under the Tucker Act on a theory arising out of such a statutory relationship, *see, e.g., McBryde v. United States,* 299 F.3d 1357 (Fed.Cir.2002), I offer no opinion regarding its possible application.