**Richard ABRAHAM, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 07–558C.**

United States Court of Federal Claims.

March 24, 2008.

---

Richard Abraham, Weston, Massachusetts, pro se.

David D'Alessandris, United States Department of Justice, Civil Division, Washington, D.C., counsel for Defendant.

## MEMORANDUM OPINION AND ORDER

BRADEN, Judge.

### I. RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY.[1]

On July 24, 2007, Plaintiff filed a *pro se* Complaint in the United States Court of Federal Claims alleging breach of contract by the Internal Revenue Service ("IRS"). *See* Compl. at 1.

Following the death of Plaintiff's mother, the Complaint alleges that Plaintiff became concerned about the "accuracy or propriety" of her executor's planned estate tax filings. *Id.* ¶¶ 1–3. After seeking advice from counsel, the Complaint alleges that Plaintiff contacted the IRS by phone to discuss his concerns. *Id.* ¶ 4. The IRS agent on duty advised Plaintiff to send a letter to the IRS discussing his concerns about estate tax filings and to pay his share of the estate taxes due. *Id.* ¶¶ 6–7. The Complaint alleges that the IRS agent also advised Plaintiff that he would be entitled to an award of any deficiency taxes collected by the IRS. *Id.* ¶ 8.

On March 9, 1998, Plaintiff forwarded a check for $109,292 to cover his share of taxes due. *Id.* ¶ 10; *see also* Ex. 1. In addition, Plaintiff advised the IRS that he suspected "the ownership interests of the executors'

---

1. The facts cited herein were derived from: Plaintiff's July 24, 2007 Complaint ("Compl.") and attached Exhibit 1 ("Ex. 1"); the Government's October 24, 2007 Motion To Dismiss ("Gov't Mot. to Dismiss"); Plaintiff's November 14, 2007 Opposition To Government's Motion To Dismiss And Motion For Summary Judgment ("Pl.Op."); the Government's December 14, 2007 Opposition To Plaintiff's Motion for Summary Judgment, And Reply In Support of Defendant's Motion To Dismiss ("Gov't Reply"); Plaintiff's December 27, 2007 Affidavit In Support Of Plaintiff's Motion For Summary Judgment ("Pl. Aff."); and Plaintiff's February 21, 2008 Affidavit.

family limited partnerships were intentionally inaccurate for the purpose of evading taxes" and that "the monies the executors, [and] beneficiaries, purportedly used to pay for their respective interests in the [limited partnerships] had not been accounted for as taxable assets[.]" Compl. ¶ 11; *see also* Ex. 1. Subsequently, the IRS audited the estate, found that the ownership interests asserted were inaccurate, and determined that funds used by the executors to pay for the interests in the limited partnerships were not properly accounted for as taxable assets. *Id.* After several years of litigating with the Estate, in 2006 the IRS collected a tax deficiency of $1,125,210. *See Estate of Abraham v. Comm'r of Internal Revenue*, 408 F.3d 26, 28, *amended by* 429 F.3d 294 (1st Cir.2005); *see also* Compl. ¶¶ 13–16.

On October 25, 2006, Plaintiff sent the IRS an "Application for Reward for Original Information." *See Richard Abraham v. Comm'r of Internal Revenue*, No. 8308–07W (T.C., June 13, 2007) (*"Abraham"*), slip. op.

at 2. On January 11, 2007, the IRS informed Plaintiff that he did not meet the IRS's criteria for a reward, but Plaintiff had the right to bring a suit in the United States Court of Federal Claims. *Id.* On January 19, 2007, Plaintiff requested reconsideration. *Id.* On February 27, 2007, Plaintiff received a letter from the IRS again stating: "we have considered the information you supplied and determined that the information does not warrant reopening your claim for a reward." Compl. ¶ 15.

On March 12, 2007, Plaintiff filed a Complaint in the United States Tax Court that was dismissed on June 13, 2007 for lack of jurisdiction. *See Abraham*, No. 8308–07W, slip. op. at 1.

In response, on July 24, 2007, Plaintiff filed a Complaint in the United States Court of Federal Claims alleging a breach of contract and demanding 10–15% of the $1,125,210 deficiency collected by the IRS, pursuant to 26 U.S.C. § 7623.[2] On October 23, 2007, the

---

**2.** Section 7623 of the Internal Revenue Code provides:
   (a) In general. The Secretary, under regulations prescribed by the Secretary, is authorized to pay such sums as he deems necessary for—
      (1) detecting underpayments of tax, or
      (2) detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws or conniving at the same[.]
   26 U.S.C. § 7623.
   The implementing regulation to Section 7623 states:
   (a) In general. In cases where rewards are not otherwise provided for by law, *a district or service center director may approve a reward*, in a suitable amount, for information that leads to the detection of underpayments of tax, or the detection and bringing to trial and punishment of persons guilty of violating the internal revenue laws or conniving at the same. The rewards provided for by section 7623 [26 U.S.C. § 7623] and this section will be paid from the proceeds of amounts (other than interest) collected by reason of the information provided. For purposes of section 7623 [26 U.S.C. § 7623] and this section, proceeds of amounts (other than interest) collected by reason of the information provided include both additional amounts collected because of the information provided and amounts collected prior to receipt of the information if the information leads to the denial of a claim for refund that otherwise would have been paid.
            * * *
   (c) Amount and payment of reward. All relevant factors, including the value of the information furnished in relation to the facts developed by the investigation of the violation, will be taken into account by a district or service center director in determining whether a reward will be paid, and, if so, the amount of the reward. The amount of a reward will represent what the district or service center director deems to be adequate compensation in the particular case, generally not to exceed fifteen percent of the amounts (other than interest) collected by reason of the information. Payment of a reward will be made as promptly as the circumstances of the case permit, but not until the taxes, penalties, or fines involved have been collected. However, if the informant waives any claim for reward with respect to an uncollected portion of the taxes, penalties, or fines involved, the claim may be immediately processed. Partial reward payments, without waiver of the uncollected portion of the taxes, penalties, or fines involved, may be made when a criminal fine has been collected prior to completion of the civil aspects of a case, and also when there are multiple tax years involved and the deficiency for one or more of the years has been paid in full. *No person is authorized under this section to make any offer, or promise, or otherwise to bind a district or service center director with respect to the payment of any reward or the amount of the reward.*
   26 C.F.R. § 301.7623–1 (emphasis added).

Government filed a Motion To Dismiss. On November 14, 2007, Plaintiff filed an Opposition To Government's Motion To Dismiss And Motion For Summary Judgment. On December 14, 2007, the Government filed an Opposition To Plaintiff's Motion For Summary Judgment, And Reply In Support Of Defendant's Motion To Dismiss. On December 27, 2007, Plaintiff filed an Affidavit In Support Of Plaintiff's Motion For Summary Judgment.

## II. DISCUSSION.

### A. Jurisdiction.

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act. *See* 28 U.S.C. § 1491. This Act authorizes the court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages ... the Act merely confers jurisdiction upon it whenever the substantive right exists." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Therefore, in order to pursue a substantive right within the jurisdictional reach of the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States,* 386 F.3d 1091, 1094 (Fed.Cir.2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); *see also Fisher v. United States,* 402 F.3d 1167, 1172 (Fed.Cir.2005) (*en banc*) ("The Tucker Act does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the

right to money damages."). The burden of establishing jurisdiction falls upon the party asserting jurisdiction. *See FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (holding that the burden is on the party seeking to exercise jurisdiction clearly to allege facts sufficient to establish jurisdiction); *see also* RCFC 12(b)(1).

### B. Standard For Decision On A Motion To Dismiss, Pursuant To RCFC 12(b)(1).

A challenge to the "[United States Court of Federal Claims'] general power to adjudicate in specific areas of substantive law ... is properly raised by a [Rule] 12(b)(1) motion." *See Palmer v. United States,* 168 F.3d 1310, 1313 (Fed.Cir.1999); *see also* RCFC 12(b)(1) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *See Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995). Nonetheless, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question, it [is] incumbent upon [plaintiff] to come forward with evidence establishing the court's jurisdiction.").

### C. Standard For Decision On A Motion To Dismiss, Pursuant To RCFC 12(b)(6).

Although a complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Bell Atl. Corp. v. Twombly,* —— U.S. ——, ——, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (citations omitted). In order to survive a motion to dismiss, however, the court "do[es] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.; see also* RCFC 12(b)(6) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted[.]").

When reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, the court "must accept as true all the factual allegations in the complaint, and ... indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States,* 241 F.3d 1375, 1378 (Fed.Cir. 2001) (citations omitted).

### D. Standard For Decision On A Motion For Summary Judgment, Pursuant to RCFC 56(c).

On a motion for summary judgment, if there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law. *See Moden v. United States,* 404 F.3d 1335, 1342 (Fed.Cir.2005) ("Summary judgment is only appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."); *see also* RCFC 56(c).

Only genuine disputes of material facts that might affect the outcome of the suit will preclude entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.... That is, while the materiality determination rests on the substantive law, it is

the substantive law's identification of which facts are critical and which facts are irrelevant that governs."). The existence of "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Id.* Therefore, to avoid summary judgment, the nonmoving party must put forth evidence sufficient for a reasonable factfinder to return a verdict for that party. *Id.* at 248–50, 106 S.Ct. 2505 (citations omitted).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (holding the moving party must meet its burden "by 'showing'—that is pointing out to the [trial court] that there is an absence of evidence to support the nonmoving party's case."); *see also Riley & Ephriam Constr. Co., Inc.,* 408 F.3d 1369, 1371 (Fed.Cir.2005) ("The moving party bears the burden of demonstrating the absence of a genuine issue of material fact."). Once the moving party demonstrates the absence of a genuine issue of material fact, however, the burden shifts to the nonmoving party to show the existence of a genuine issue for trial. *See Novartis Corp. v. Ben Venue Labs.,* 271 F.3d 1043, 1046 (Fed.Cir. 2001) (explaining that, once the movant has demonstrated the absence of a genuine issue of material fact, "the burden shifts to the nonmovant to designate specific facts showing that there is a genuine issue for trial.").

A trial court is required to resolve all doubt over factual issues in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). And, all reasonable inferences and presumptions must be resolved in favor of the nonmoving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *see also Moden,* 404 F.3d at 1342 ("[A]ll justifiable inferences [are drawn] in favor of the party opposing summary judgment").

### E. Pleading Requirements Of A *Pro Se* Plaintiff.

In the United States Court of Federal Claims, the pleadings of a *pro se* plaintiff are

held to a less rigid standard than litigants represented by counsel. *See Castro v. United States,* 540 U.S. 375, 386, 124 S.Ct. 786, 157 L.Ed.2d 778 (2003) (Scalia, J., concurring) ("[T]he allegations of a pro se litigant's complaint are to be held 'to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972))). It has been the tradition of this court to examine the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Manuel v. United States,* 78 Fed.Cl. 31, 34 (2007) (quoting *Ruderer v. United States,* 188 Ct.Cl. 456, 468, 412 F.2d 1285 (1969)). Nevertheless, "'[t]his latitude ... does not relieve a *pro se* plaintiff from meeting jurisdictional requirements.'" *Skillo v. United States,* 68 Fed.Cl. 734, 739 (2005) (quoting *Bernard v. United States,* 59 Fed. Cl. 497, 499 (2004), *aff'd,* 98 Fed.Appx. 860 (Fed.Cir.2004)).

## F. The Court's Resolution Of The Government's October 24, 2007 Motion To Dismiss.

### 1. Jurisdiction.

The Government argues that Plaintiff may not rely on 26 U.S.C. § 7623, 26 C.F.R. § 301.7623–1, or IRS Publication 733 to establish jurisdiction under the Tucker Act, because none of these authorities are money mandating. *See* Gov't Mot. to Dismiss at 7 (citing *Merrick v. United States,* 846 F.2d 725, 726 (Fed.Cir.1988)) (holding that Section 7623 is "an indefinite reward and offer that an informant may respond to by his conduct"); *see also Krug v. United States,* 168 F.3d 1307, 1309–10 (Fed.Cir.1999) (holding that Section 7623 "floats an indefinite reward offer that an informant may respond to by conduct, but a binding contract does not arise until the Government brings the offer to ground by a specific award"). Plaintiff does not contest this argument. *See* Pl. Op. at 6 ("Plaintiff, in the instant matter, did not, to the best of his knowledge mention 7623[.]"); *but see* Compl. ¶ 18 ("[U]nder section 7623(b)(4), rewards have been increased to 15% to 30%"). Instead, Plaintiff contends that he entered into a contract with the Government. *See* Pl. Op. at 6 ("In this in-

stant matter, the United States Court of Federal Claims has Jurisdiction to entertain monetary claims, founded [on] oral contracts."); *see also id.* at 5 ("[A] contract to pay the plaintiff a reward for the information is implied[.]"). Plaintiff asserts that the July 24, 2007 Complaint sufficiently alleges an oral, implied-in-fact contract and an implied-in-law contract. *See* Pl. Op. at 5–6.

■ The United States Court of Federal Claims does not have jurisdiction to adjudicate implied-in-law contracts. *See LaMirage, Inc. v. United States,* 44 Fed.Cl. 192, 200 (1999) ("It is well settled that [the United States Court of Federal Claims] is without jurisdiction to entertain claims arising from a contract, based on the theory of promissory estoppel, or based on contracts implied-in-law.") (citations omitted); *see also City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990) ("[T]he Claims Court held that Congress had not relinquished the Government's sovereign immunity with respect to implied-in-law contract obligations."). Therefore, to the extent that the July 24, 2007 Complaint alleges an implied-in-law contract, as a matter of law, such claims must be dismissed.

■ The United States Court of Federal Claims, however, does have jurisdiction to adjudicate implied-in-fact contracts. *See Perri v. United States,* 340 F.3d 1337, 1343 (Fed.Cir.2003) ("The [United States] Court of Federal Claims' jurisdiction over claims founded on an express or implied contract with the United States extends only to contracts either express or implied in fact, and not to claims on contracts implied in law.") (citation and quotations omitted). Therefore, the court has jurisdiction to ascertain whether the July 24, 2007 Complaint alleges sufficient facts to assert an implied-in-fact contract claim. *See Krug,* 168 F.3d at 1308 ("[O]ur precedents establish that 26 U.S.C. § 7623 and its implementing regulation, 26 C.F.R § 301.7623–1(a), *alone* do not contractually bind the Government.") (emphasis added) (citation omitted); *see also* RCFC 12(b)(1).

## 2. Breach Of Contract Claim.

The Government asserts that the July 24, 2007 Complaint fails to plead any of the necessary elements for a contract with the United States. *See* Gov't Mot. to Dismiss at 8 ("[P]laintiff must show: (1) mutuality of intent to contract (*i.e.*, offer and acceptance); (2) consideration; (3) lack of ambiguity in offer and acceptance; and ([4]) a Government representative who had actual authority to bind the Government in contract.") (citing *City of El Centro*, 922 F.2d at 820); *Cruz–Pagan v. United States*, 35 Fed.Cl. 59, 60 (1996) ("To establish an enforceable contract with the United States, a party must show a mutual intent to contract, including an offer, an acceptance, and consideration passing between the parties.") (citation omitted). First, the Complaint does not allege a written contract. *See* Gov't Mot. to Dismiss at 8.[3] Second, there was no agreement of any specific reward amount. *Id.* ("Mr. Abraham does not assert that there was any agreement as to an amount of reward[.]"); *see also* Gov't Reply at 4 (citing *Merrick*, 846 F.2d at 726 ("[A] contractual claim against the Government will arise ... only after the informant and the government negotiate and fix a specific amount as the reward.")). Therefore, at best, the IRS agent only induced Plaintiff to take action that should be construed as an offer, but the Government never accepted that offer by agreeing to pay a specific award amount. *See* Gov't Reply at 4 (citing *Krug*, 168 F.3d at 1309–10 ("[I]n Publication 733 and pursuant to § 7623 and the regulation, the Government *invites* offers for a reward; the informant *makes* an offer by his conduct; and the Government *accepts* the offer by agreeing to pay a specific sum.") (emphasis in original)). Finally, the Government argues that the IRS agent did not have authority to bind the Government. *See* Gov't Mot. to Dismiss at 9 ("[T]he Government cannot be bound in contract by someone who does not have actual authority to contract on behalf of the Government, even if he has apparent authority.") (citing *H. Landau & Co. v.*

*United States*, 886 F.2d 322, 324 (Fed.Cir. 1989)); *see also id.* ("Mr. Abraham does not allege that the agent on duty possessed the authority to bind the United States contractually."); *but see* Pl. Aff. ¶ 4 ("Even if the IRS agent on duty misspoke, or did not have contracting authority, the director or contracting agent of the IRS indeed acted swiftly upon my informant information that I provided to the IRS and as a result, the IRS collected $1,125,210").

To establish an implied-in-fact contract with the United States, Plaintiff must establish consideration, mutuality of intent, definiteness of terms, and authority of the official whose conduct is relied upon to bind the Government. *See H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1575 (Fed. Cir.1984) ("[Plaintiffs] have to show mutuality of intent to contract, offer and acceptance, and that the officer whose conduct is relied upon had actual authority to bind the government in contract."); *see also Tree Farm Dev. Corp. v. United States*, 218 Ct.Cl. 308, 585 F.2d 493, 500 (1978) ("The requirements of mutuality of intent and the lack of ambiguity in offer and acceptance are the same for an implied-in-fact contract as for an express contract; only the nature of the evidence differs.") (citation omitted). A complaint must allege "enough facts to state" a breach of contract "that is plausible on its face." *See Bell Atl. Corp.*, 127 S.Ct. at 1974; *see also* RCFC 9(h)(3) (requiring a "description of the contract ... sufficient to identify it").

An implied-in-fact contract does not have to be in writing and signed. *See Hanlin v. United States*, 50 Fed.Cl. 697, 699 (2001) ("Except, then, for the absence of a writing memorializing the parties' agreement, an implied-in-fact contract does not differ from an express contract."). The unpublished decision cited by the Government, *Thomas Creek Lumber*, 250 Fed.Appx. at 319, is inapplicable, because the regulation at issue in that case required a written contract.[4] *Id.* In

---

**3.** In support, the Government cites *Thomas Creek Lumber and Log Co. v. Sec'y of Interior*, 250 Fed.Appx. 316, 319 (Fed.Cir.2007) (unpublished) (citing *Am. Gen. Leasing Inc. v. United States*, 218 Ct.Cl. 367, 587 F.2d 54 (1978) (determining that

where applicable procurement regulations required Government contracts to be in writing, no oral contract was formed)).

**4.** 43 C.F.R. § 5424.0–6(b) states:

addition, the *American General Leasing* case cited by the Government also is inapplicable, as it involved a bid solicitation that required a final written agreement. *See Am. Gen. Leasing,* 587 F.2d at 57 ("[T]he letter clearly indicates two prerequisites necessary in order to bind the parties contractually: (1) a written letter by Commerce, and (2) the obtaining of formal financing from GSA, neither of which occurred.").

In this case, the July 24, 2007 Complaint alleges that the implied-in-fact contract at issue was based on an offer made by an IRS agent. *See* Compl. ¶ 8 ("The IRS agent on duty also told Mr. Abraham he would be entitled to an award of [ ] any deficiency taxes collected by the IRS."). Neither 26 U.S.C. § 7623 nor the implementing regulation *require* a written contract to receive an award from the Government.[5]

The court has determined that the July 24, 2007 Complaint sufficiently alleges an offer by the Government and acceptance by Plaintiff. *See* Compl. at 1 ("The IRS agent on duty recommended that Mr. Abraham state his understanding and information of the tax filing improprieties in a letter.... Mr. Abraham followed the advice of the IRS agent on duty and wrote the requested letter[.]"). The court is mindful that governing precedent holds that 26 U.S.C. § 7623 *alone* is not enough to constitute an offer by the Government. *See Merrick,* 846 F.2d at 725 ("The United States cannot be contractually bound merely by invoking the cited statute and regulation.") (citation omitted); *see also Krug,* 168 F.3d at 1308 ("26 U.S.C. § 7623 ... *alone* do[es] not contractually bind the Government.") (emphasis added). In *Merrick,* an IRS agent "informed [Plaintiff] that

[Plaintiff] would receive a reward for providing the information, and that the reward would be calculated under para. 1 of IRS Publication No. 733[.]" *See Merrick,* 846 F.2d at 725. In turn, that plaintiff provided the IRS with information about an illegal tax shelter. Our appellate court determined that those facts were "sufficient to state that the *IRS fixed the amount of the reward*" and were "sufficient to state a contract claim against the United States." *Id.* at 726 (emphasis added). In contrast, the plaintiff in *Krug* relied solely on 26 U.S.C. § 7623 and never discussed a reward with the IRS or received any additional offer. *See Krug,* 168 F.3d at 1308–09.

Accordingly, the United States Court of Appeals for the Federal Circuit has held that:

> the IRS's conduct, as described by the trial court, in dealing with Mr. Krug leaves much to be desired in terms of how the Government should treat its citizens, perhaps the only conclusion to be drawn from this case is that it may be wiser for an informant to discuss the reward *before,* rather than after, the information is given.

*Id.* at 1310 (emphasis added).

In this case, the July 24, 2007 Complaint alleges that an IRS agent offered Plaintiff an award, prior to his submission of the information. *See* Compl. ¶ 10 ("[Plaintiff] followed the advice of the IRS agent on duty and wrote the requested letter dated March 9, 1998."); *see also* Ex. 1 (letter to IRS). Therefore, rather than inviting Plaintiff to make an offer, the facts alleged present the Government's conduct as making an offer. *See Merrick,* 846 F.2d at 726 ("[O]ur precedents establish that the subject statute and

---

The severance and or removal of any vegetative resource for personal or commercial use requires a written contract or permit issued by the authorized officer or other person authorized by the United States.

43 C.F.R. § 5424.0–6(b)

5. 26 C.F.R. § 301.7623–1(d) states:

Submission of information. A person that desires to claim a reward under section 7623 and this section may submit information relating to violations of the internal revenue laws, in person, to the office of a district director, preferably to a representative of the Criminal Investigation Division. Such information may also

be submitted in writing to the Commissioner of Internal Revenue, Attention: Assistant Commissioner (Criminal Investigation), 1111 Constitution Avenue, NW., Washington, DC 20224, to any district director, Attention: Chief, Criminal Investigation Division, or to any service center director. If the information is submitted in person, either orally or in writing, the name and official title of the person to whom it is submitted and the date on which it is submitted must be included in the formal claim for reward.

26 C.F.R. § 301.7623–1(d).

regulation amount to an indefinite reward offer that an informant may respond to by his conduct. . . . Because, however, the obstacle of indefiniteness may be removed by the subsequent conduct of the parties, an enforceable contract arises when the parties fix the reward amount.") (citing RESTATEMENT (SECOND) OF CONTRACTS § 34 cmt. c (1981)); *see also Briggs v. United States,* 15 Ct.Cl. 48, 54 (Ct.Cl.1879) ("It is a familiar principle of law that the offer of a reward by a party, when accepted and complied with by another, constitutes a valid contract."). If the IRS agent's statements constituted an offer, then Plaintiff's letter could constitute an acceptance. *See* 1–2 CORBIN ON CONTRACTS § 2.2 (2007) ("The determination of whether a certain communication by one party to another is an operative offer, and not merely an inoperative step in the preliminary negotiation, is a matter of interpretation in the light of all the surrounding circumstances.") (citations omitted).

In addition, the July 24, 2007 Complaint properly alleges a specific award amount. *See* Compl. at ¶ 8; *see also Merrick,* 846 F.2d at 726 ("An enforceable contract will arise under these authorities only after the informant and the government negotiate and fix a specific amount as the reward.") (citing *Lagermeier v. United States,* 214 Ct.Cl. 758, 760 (1977)); *Gordon v. United States,* 92 Ct.Cl. 499, 36 F.Supp. 639, 640 (1941) ("There has been no offer by the Commissioner to pay any definite sum and, therefore, there has arisen no contract between the Commissioner and the plaintiff.").

The United States Court of Appeals for the Federal Circuit has held that determining how to calculate a reward is sufficient to meet the specificity requirement. *See Merrick,* 846 F.2d at 726 (holding that a complaint alleging that an IRS agent fixed the amount of the reward, "by establishing how the IRS would calculate it" was "sufficient to state a contract claim against the United States"). In this case, the July 24, 2007 Complaint alleges that an IRS agent informed Plaintiff that "he would be entitled to an award of [ ] any deficiency taxes collected by the IRS." Compl. ¶ 8; *see also* Pl. Aff. at ¶ 2 (The IRS agent stated "specifically that

[Plaintiff] would receive 15%–25% of the taxes collected in return for mailing in informant information leading to the collection of taxes due."). For these reasons, the court has determined that these allegations "raises [the] right to relief above the speculative level" and are sufficient to state a claim against the Government. *See Bell Atl. Corp.,* 127 S.Ct. at 1965.

In addition, the court has determined the July 24, 2007 Complaint alleges sufficient facts to support a claim that the IRS agent had authority to bind the Government to survive a Motion to Dismiss. *See H.F. Allen Orchards,* 749 F.2d at 1575 (determining that Plaintiff must show "that the officer whose conduct is relied upon had actual authority to bind the government in contract."). Again, the court is mindful that the implementing regulation to 26 U.S.C. § 7623 states:

> [A] district or service center director may approve a reward . . . . [and][n]o person is authorized under this section to make any offer, or promise, or otherwise to bind a district or service center director with respect to the payment of any reward or the amount of the reward.

26 C.F.R. § 301.7623–1. Moreover, "[a]n employee of the Government possesses *express authority* to obligate the Government *only* when the Constitution, a statute, or a regulation grants it to that employee in unambiguous terms." *Garza v. United States,* 34 Fed. Cl. 1, 18 (1995) (emphasis added). An authorized Government agent with either *implied actual authority* or express actual authority, however, may bind the Government. *See H. Landau & Co. v. United States,* 886 F.2d 322, 324 (Fed.Cir.1989) ("[I]mplied actual authority, like expressed actual authority, will suffice.") (citations omitted). To bind the Government, however, the agent "whose conduct is relied upon must have actual authority to bind the government in contract." *City of Cincinnati v. United States,* 153 F.3d 1375, 1377 (Fed.Cir.1998) ("When the United States is a party, a fourth requirement is added: The government representative whose conduct is relied upon must have actual authority to bind the government in contract.").

In *Silverman v. United States*, 230 Ct.Cl. 701, 679 F.2d 865 (1982), our appellate court's predecessor held that the Government may ratify the promise of an unauthorized agent, under certain circumstances:

> Although the senior [Federal Trade Commission] official was not a contracting officer for the FTC, with expressly delegated authority to make contracts for the Government, the FTC retained and utilized the transcripts which the plaintiff released to the FTC on the basis of the official's promise. By accepting the benefits flowing from the senior FTC official's promise of payment, the FTC ratified such promise and was bound by it.

*Id.* at 870. In addition, that court determined that an implied-in-fact contract may be found when the Government receives a direct benefit from the promise. *Philadelphia Suburban Corp. v. United States*, 217 Ct.Cl. 705, 707 (1978) ("There is also authority in this court and elsewhere for finding implied authority or ratification, in proper circumstances, where the Government has or takes the benefit of another's property.").

Subsequently, the United States Court of Appeals for the Federal Circuit clarified that *Silverman* did not authorize "institutional ratification," but rather held that the facts supported holding the official had the requisite authority to bind the Government. *See City of El Centro*, 922 F.2d at 821 ("That official, *who had authority to approve vouchers for payment for goods and services,* told plaintiff that if he would provide the remaining services and deliver the remaining transcripts, he would 'see to it that the plaintiff received payment[.]'") (emphasis in original) (*quoting Silverman*, 679 F.2d at 868). Our appellate court, however, revived the doctrine of "institutional ratification." *See Janowsky v. United States*, 133 F.3d 888, 892 (Fed.Cir.1998) ("The Court of Federal Claims erred when it dismissed the Janowskys' implied-in-fact contract claim without considering whether the agency ratified the proposed contract with the Janowskys by allowing the sting operation to continue and by receiving the benefits from it. A genuine issue of material fact thus exists concerning the contract claim."); *see also Digicon Corp.*

*v. United States*, 56 Fed.Cl. 425, 426 (2003) ("In the case of an unauthorized contract, it is well established that an agency can 'institutionally' ratify the contract, even in the absence of specific ratification by an authorized official.") (citation omitted).

In this case, the July 24, 2007 Complaint alleges that, based on a promise from an IRS agent, the Plaintiff furnished the Government with information leading to an IRS audit and the collection of a $1,125,210 tax deficiency. *See* Complaint ¶¶ 1, 2, 3, 16; *see also Abraham*, 408 F.3d at 28. The court has determined that the July 24, 2007 Complaint includes "a short and plain statement of the claim showing that the pleader is entitled to relief" on implied-in-fact contract claims. *See Bell Atl. Corp.*, 127 S.Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (holding a well-pleaded complaint may proceed, even if it appears "that a recovery is very remote and unlikely"); *see also Philadelphia Suburban*, 217 Ct.Cl. at 707 (remanding for the trial court "to decide whether a contract implied-in-fact arose in the circumstances.").

## G. The Court's Resolution Of The Plaintiff's Motion For Summary Judgment.

■ The court has determined there are a number of factual issues that must be resolved in this case and Plaintiff's December 27, 2007 Affidavit does not establish that there are no genuine issues of material fact at issue. First, whether there was an offer and acceptance between the IRS agent and Plaintiff, in fact, requires a factual determination. *See* 1–2 CORBIN ON CONTRACTS § 2.2 (2007) ("The determination of whether a certain communication by one party to another is an operative offer, and not merely an inoperative step in the preliminary negotiation, is a matter of interpretation in the light of all the surrounding circumstances.") (citations omitted). Plaintiff's bare assertion that the IRS agent made an offer is not sufficient to establish liability, even by the clear and convincing standard. *See* Pl. Aff. ¶ 3 ("After considering the oral offer by this IRS agent

on duty, I decided to accept the offer[.]"). Second, the determination of the specific amount of award offered by the IRS agent must be determined for both the purposes of the contract formation and award determination. *See Merrick*, 846 F.2d at 726 ("An enforceable contract will arise under these authorities only after the informant and the government negotiate and fix a specific amount as the reward."). Again, Plaintiff's December 27, 2007 Affidavit is insufficient. Moreover, there is an inconsistency between the Complaint and Plaintiff's Affidavit. *Compare* Compl. ¶ 8 (alleging that the IRS agent informed Plaintiff that "he would be entitled to an award of [ ] any deficiency taxes collected by the IRS") *with* Pl. Aff. ¶ 2 (representing that the IRS agent "stated specifically that [Plaintiff] would receive 15%–25% of the taxes collected in return for mailing in informant information leading to the collection of taxes due."). Finally, to establish the authority of the IRS agent to make a contractual offer requires a factual determination. *See AgriStor Leasing v. Farrow*, 826 F.2d 732, 737 (8th Cir.1987) (an express or implied agency "focuses on communications and contacts between the principal and the agent").

For these reasons, the court has determined that Plaintiff is not entitled to summary judgment. *See Moden v. United States*, 404 F.3d 1335, 1342 (Fed.Cir.2005) ("Summary judgment is only appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."); *see also* RCFC 56(c).

## III. CONCLUSION.

For these reasons, the Government's October 24, 2007 Motion To Dismiss is denied. Plaintiff's November 14, 2007 Motion For Summary Judgment is denied.

The court will convene a telephone conference at 2:00 p.m. EDT on April 1, 2008 to enter a Discovery Order and set a trial date.

**IT IS SO ORDERED.**