ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -                                          )
                                                     )
U.S. Coating Specialties & Supplies, LLC             )      ASBCA No.      58245
                                                     )
Under Contract No.      W912EE-10-C-0019             )

APPEARANCE FOR THE APPELLANT:            Louis H. Watson Jr., Esq.
                                           Watson & Norris, PLLC
                                           Jackson, MS

APPEARANCES FOR THE GOVERNMENT:          Michael P. Goodman, Esq.
                                           Engineer Chief Trial Attorney
                                         Steven H. Finch, Esq.
                                         John M. Breland, Esq.
                                           Engineer Trial Attorneys
                                           U.S. Army Engineer District, Vicksburg

OPINION BY ADMINISTRATIVE JUDGE WOODROW

This appeal arises from the termination for default of a contract to construct a building to house a large unclassified supercomputer at the Army's Engineering Research and Design Center (ERDC). On April 9, 2015, the Board issued a decision denying the government's amended motion to dismiss or, in the alternative, for summary judgment. *U.S. Coating Specialties & Supplies, LLC*, ASBCA No. 58245, 15-1 BCA ¶ 35,957 (*U.S. Coating I*). On January 21, 2016, the government filed a renewed motion for summary judgment, contending that the parol evidence rule barred evidence of an alleged prior oral agreement between appellant and the Assistant U.S. Attorney (AUSA) during appellant's Chapter 11 bankruptcy proceedings, and alternatively, that the AUSA lacked actual authority to enter into the alleged agreement. On April 6, 2017, the Board issued a decision denying the government's motion. *U.S. Coating Specialties & Supplies, LLC*, ASBCA No. 58245, 17-1 BCA ¶ 36,710 (*U.S. Coating II*).

In *U.S. Coating II*, we held that the record was insufficient to determine whether the April 25, 2012 bankruptcy agreement was a fully integrated agreement and that genuine issues of material fact existed regarding whether there was a separate oral agreement with the government to terminate the contract for convenience. 17-1 BCA ¶ 36,710 at 178,760. We further held the AUSA possessed the necessary authority to bind the government when the parties entered into the April 25, 2012 bankruptcy settlement agreement. *Id.* at 178,761.

Subsequently, the parties agreed to the submission of the appeal on the record without a hearing pursuant to Board Rule 11. Based on the briefs and evidence submitted, we conclude that appellant has not met its burden of demonstrating that the parties entered into a separate oral agreement to terminate the contract for convenience. We further conclude that the contracting officer (CO) reasonably exercised her discretion when she terminated the contract for default. Accordingly, we deny the appeal.

FINDINGS OF FACT

I. The Contract

1. On June 21, 2010, the U.S. Army Corps of Engineers (Corps) awarded Contract No. W912EE-10-C-0019 (contract) to appellant, U.S. Coating Specialties & Supplies, LLC (U.S. Coating) in the amount of $11,383,000 for the construction of a U.S. Army Engineer Research and Development Center Information Technology Laboratory office building and computer facility in Vicksburg, Mississippi (ERDC Project) (R4, tab 3 at 5-6[1]).

2. The contract included the standard Federal Acquisition Regulation (FAR) default clause, 52.249-10, DEFAULT (FIXED-PRICE CONSTRUCTION) (APR 1984), which provided, in pertinent part:

> (a) If the Contractor refuses or fails to prosecute the work or any separable part, with the diligence that will insure its completion within the time specified in this contract including any extension, or fails to complete the work within this time, the Government may, by written notice to the Contractor, terminate the right to proceed with the work (or the separable part of the work) that has been delayed. . . .
> . . . .
>
> (c) If, after termination of the Contractor's right to proceed, it is determined that the Contractor was not in default, or that the delay was excusable, the rights and obligations of the parties will be the same as if the termination had been issued for the convenience of the Government.

(*Id.* at 132-34)

3. U.S. Coating's principal subcontractor was Mid-State Construction Company, Inc. (Mid-State) (gov't br., ex. A at 2).

---

[1] Citations to the Rule 4 file are to the consecutively-numbered pages unless otherwise indicated.

4. Because U.S. Coating lacked the requisite bonding capacity for the project, Mid-State agreed to serve as a major subcontractor for the Project and to indemnify the bonds of U.S. Coating and Earl Washington, U.S. Coating's President and CEO. Mid-State Construction Company, Inc. provided the bonding for U.S. Coating's bid and contract on the ERDC Project. (Gov't br., ex. A at 2)

5. On November 19, 2010, U.S. Coating entered into a subcontract agreement with Mid-State to perform the work on the ERDC Project. Pursuant to the terms of an escrow agreement between U.S. Coating and Mid-State, U.S. Coating was to deposit all of the project payments it received from the government into an escrow account. (*Id.* at 3)

6. Mid-State performed work on the ERDC Project pursuant to the terms of the subcontract agreement with U.S. Coating (*id.* at 3). U.S. Coating paid Mid-State up until March 2011, but did not pay Mid-State for the April, May, and June 2011 subcontract billings, despite having been paid by the government for the work Mid-State performed (*id.* at 4).

7. On June 7, 2011, Mid-State provided notice to U.S. Coating that it would exercise its rights pursuant to the subcontract agreement within seven days unless the defaults were cured. U.S. Coating did not cure the default, and on June 14, 2011, Mid-State terminated the subcontract agreement and stopped work on the Project. (*Id.* at 5)

8. In a letter to U.S. Coating, dated August 17, 2011, the CO, Jeri H. McGuffie (CO McGuffie), described a host of performance problems, including: a 90-day delay in schedule, including multiple critical path items; the failure to maintain the site following rain events; the failure timely to provide the structural steel erection plan; the failure to reach firm agreements with various subcontractors; changing management personnel without notice; the failure to ensure adequate materials and equipment are onsite; and multiple failures to promptly pay subcontractors. (Gov't reply br., ex. E)

9. On November 22, 2011, Mid-State won a $1.2 million arbitration award against U.S. Coating determining that U.S. Coating failed to tender payments to Mid-State (gov't br., ex. A at 11). The arbitrator found that U.S. Coating had materially breached the contract for failure to pay Mid-State, stating U.S. Coating had "offered no valid explanation as to why [Mid-State]" was not paid (*id.* at 7).

II. Bankruptcy Proceedings

10. On January 13, 2012, during performance of the contract, U.S. Coating sought bankruptcy protection, filing a Chapter 11 voluntary petition in the United States Bankruptcy Court for the Southern District of Mississippi (Bankruptcy Court) (R4, tab 4).

11. On February 24, 2012, Travelers Casualty and Surety Company of America (Travelers), U.S. Coating's surety for the contract, filed a motion ("Dkt. #38") in the Bankruptcy Court, seeking relief from the automatic stay imposed by U.S. Coating's bankruptcy filing to enforce its rights under a General Agreement of Indemnity between Travelers and U.S. Coating (R4, tab 5). Travelers also filed another motion ("Dkt. #39") on the same date to compel rejection of the contract, or alternatively, to compel U.S. Coating to assume or reject the contract pursuant to 11 U.S.C. § 365 (gov't supp. R4, tab 1).[2]

12. On March 13, 2012, Mid-State, U.S. Coating's subcontractor, filed a response and limited objection to Travelers' motion for relief from the automatic stay ("Dkt. #52") (R4, tab 7). Mid-State also filed a response and limited objection to Travelers' motion to compel on the same date ("Dkt. #53") (gov't supp. R4, tab 3).

13. On March 13, 2012, the AUSA for the Southern District of Mississippi, David N. Usry (AUSA Usry), on behalf of the U.S. Attorney, filed responses to Travelers' February 24 motions for the United States and the agency. In its response and limited joinder in Travelers' motion for relief from the automatic stay ("Dkt. #51"), the United States moved to lift the automatic stay to pursue termination proceedings pursuant to FAR Part 49 and allow the Corps to complete the construction (R4, tab 6 at 7). The United States pled that the CO "was proscribed from . . . determin[ing] whether [U.S. Coating] was defaulted or is likely to default on the Contract for failure to make progress . . . " (*id.* at 6 ¶ 26). The United States also supported Travelers' motion to compel rejection of the contract, or alternatively, to compel U.S. Coating to assume or reject the contract (gov't supp. R4, tab 2).

14. The Bankruptcy Court issued an order on March 30, 2012, directing U.S. Coating, the debtor, to file a motion to assume or reject the contract by April 13, 2012 and setting a trial on any such motion for April 26, 2012 (gov't supp. R4, tab 4).

15. In April 2, 2012, correspondence with the Corps, U.S. Coating stated that it had arranged for a new subcontractor, MTNT, to take over the contract after Mid-State Construction walked off the job. Mr. Washington requested a meeting with the government to discuss a reorganization of the contract such that MTNT would become the prime contractor, but CO McGuffie refused to meet. (Gov't br., ex. D)

16. On April 4, 2012, CO McGuffie responded and explained why she refused to meet. She said that, despite her numerous requests, U.S. Coating had not provided her with sufficient information about the exact contractual relationship it intended. She explained that FAR 49.402-4, Procedures in lieu of Termination for Default, allows a contractor to "continue performance of the contract by means of a subcontract or other business

---

[2] *See U.S. Coating I*, 15-1 BCA ¶ 35,957 at 175,706 for a discussion of the terms "assumption" and "rejection" of contracts under bankruptcy law.

4

arrangement with an acceptable third party, provided the rights of the Government are adequately preserved." FAR 49.402-4(b). According to CO McGuffie, U.S. Coating provided her no assurances that its current bonding company consented to the assignment of the contract to MTNT and that, without such assurances, the government's rights would not be adequately protected. (Gov't br., ex. D)

17. After obtaining leave from the Bankruptcy Court to file its motion, U.S. Coating moved to assume the contract on April 17, 2012 (R4, tab 9). The United States filed a response to the motion on April 20, 2012, demanding proof of U.S. Coating's ability to assume the contract at the April 26, 2012 trial. The response was filed by AUSA Usry. (R4, tab 12)

A. The April 24, 2012 Teleconference

18. On April 24, 2012, prior to the scheduled April 26, 2012 hearing, U.S. Coating, Travelers, the United States, and Mid-State participated in a telephone call to discuss a potential settlement of Traveler's motion for relief from the automatic stay. The participants in the call included AUSA Usry, Earl Washington, President and CEO of U.S. Coating, Herbert J. Irvin, counsel for U.S. Coating in the bankruptcy action, Mark Herbert, counsel for Travelers, Ms. Velma Day, an employee of U.S. Coating, and Mr. Alden Brooks, an employee of U.S. Coating. (R4, tab 15 ¶ 20).

19. With respect to the April 24, 2012 teleconference, Mr. Washington's affidavit stated, in pertinent part:

> With respect to my main concern, the nature of the termination that could be entered by the Corps, there was difficulty hearing everything due to speaker phone breakup on both ends of the call, *but I understood David Usry to say that the Corps would have no issue with a termination for reasons other than default*, but that the Corps could not take any action until the Automatic Stay was lifted.

(App. supp. R4, tab 1 at 7, ¶ 37 (Washington aff., dated Oct. 31, 2018))

20. Ms. Day's affidavit stated that telephone discussions between U.S. Coating's counsel, Herb Irvin, and AUSA Usry took place on April 24, 2012, and there were discussions about the automatic stay being lifted to allow discussions about a termination for convenience (app. supp. R4, tab 4 (Day aff., dated Jan. 7, 2014)).

21. Mr. Brooks' affidavit stated that he received a telephone call on April 24, 2012, to attend a meeting to discuss a resolution that would allow for a termination of the contract for convenience. Mr. Brooks stated that U.S. Coating's counsel and AUSA Usry

exchanged messages and it was his understanding that all parties agreed to terminate the contract for convenience. (App. supp. R4, tab 3 (Brooks aff., dated Oct. 31, 2018))

22. U.S. Coating's counsel, Mr. Irvin, stated "that either everyone on our end of the conference call . . . must have misunderstood what David Usry said, or the Corps was not acting in good faith during the negotiations" (app. supp. R4, tab 2 at 6-7, ¶ 35 (Irvin aff., dated Oct. 31, 2018)). Mr. Irvin does not explicitly claim that an agreement with the government was reached during the phone call. Instead, he avers that:

> [W]e understood [AUSA] David Usry to stay that the Corps would have no issue with a termination for reasons other than default, but that the Corps could not take any action until the Automatic Stay was lifted.

(App. supp. R4, tab 2 at 5, ¶ 29 (Irvin aff., dated Oct. 31, 2018))

23. Prior to the phone call, the only explicit discussion of a termination for other than default was between counsel for U.S. Coating and counsel for the surety, Travelers (app. supp. R4, tab 1 at 4, ¶¶ 19-20 (Washington aff., dated Oct. 31, 2018); R4, tab 15 at 1-2, ¶¶ 7-8).

B. The Bankruptcy Settlement

24. On April 25, 2012, the parties advised the Bankruptcy Court that they reached a settlement on pending issues set for trial and submitted a proposed order for the Bankruptcy Court's approval (R4, tab 20 at 45[3]).

25. Based on the parties' communicated settlement and proposed order, the Bankruptcy Court judge issued an order on April 25, 2012 (Agreed Order), stating in pertinent part:

> The Court, being fully advised in the premises and having considered the settlement of the foregoing pleadings as reflected below, finds that cause exists pursuant to 11 U.S.C. § 362(d)(1) to grant Travelers and the Corps relief from the automatic stay and finds that the Motion to Assume should be denied and that the contract ("Contract") between the Debtor and the Corps . . . should be deemed rejected.
>
> IT IS, THEREFORE, ORDERED that the Contract is hereby rejected as a matter of law.

---

[3] Citation is to the original pagination.

IT IS FURTHER ORDERED that the automatic stay is hereby terminated in favor of the Corps and Travelers with respect to the Contract and General Agreement of Indemnity ("GAI").

IT IS FURTHER ORDERED that this Order does not adjudicate or waive any respective rights and/or defenses of Travelers, the Corps, or Mid State with respect to the Contract, the Bonded Project, the GAI, or the performance and payment bonds issued by Travelers on the project.

IT IS FURTHER ORDERED that, because the Automatic Stay Motion was sufficient to afford reasonable notice of the material provisions of the agreement between the parties and opportunity for hearing, the provisions of Fed. R. Bankr. P. 4001(d)(1)-(3) do not apply and the agreement is approved without further notice.

**ORDERED** that the Stay of execution of Fed. R. Bankr. P. 4001(a)(3) is hereby waived. SO ORDERED.

(R4, tab 13 at 2-3) The order was "AGREED TO AND APPROVED AS TO FORM" by AUSA Usry, U.S. Coating's bankruptcy counsel, and representatives for Travelers, and Mid-State (*id.* at 3-4).

### III. Termination for Default and Bankruptcy Hearing

26. Following the issuance of the Bankruptcy Court's April 25, 2012 order, CO McGuffie terminated the contract for default on the same date, asserting that U.S. Coating's consent to rejection of the contract constituted an anticipatory repudiation of the contract (R4, tab 2).

27. On April 30, 2012, U.S. Coating formally filed a motion in the Bankruptcy Court to vacate the April 25, 2012 order. In its motion, U.S. Coating asserted that its consent to the settlement was based on representations made by AUSA Usry that the Corps would terminate the contract for "reasons other than default" (R4, tab 15 at 4 ¶ 32). The United States, Travelers, and Mid-State filed responses to U.S. Coating's motion to vacate the April 25, 2012 order (R4, tabs 16-18).

28. The CO's Memorandum for the Record, dated May 7, 2012, provides support for the termination for default based upon U.S. Coating's failure to make reasonable progress on critical path items. In particular, CO McGuffie noted that U.S. Coating's

7

schedule updates from December 2011 through April 2012 showed little or no progress on critical path items. During that time frame, U.S. Coating reported negative float that increased from 69 days to 185 days. Although CO McGuffie sought an explanation for the delay, U.S. Coating did not respond to her multiple letters. Moreover, U.S. Coating admitted that it would not complete performance by the June 30, 2012 completion date. Finally, U.S. Coating provided CO McGuffie with no indication that it had a viable plan to halt slippage and regain the lost time. (Gov't br., ex. B)

29. On May 17, 2012, the Bankruptcy Court held a hearing on U.S. Coating's motion to vacate. Ruling from the bench, the Bankruptcy Court denied U.S. Coating's motion, holding that U.S. Coating's contentions were insufficient to set aside the April 25 order. The Bankruptcy Court did not address the propriety of the Corps' termination of the contract for default. (R4, tab 20) The Bankruptcy Court subsequently issued a written Final Judgment based on the reasons articulated at the hearing (R4, tab 19).

IV. Proceedings before the Board

30. On July 20, 2012, U.S. Coating timely appealed from the CO's April 25, 2012 final decision, terminating the contract for default.

31. The Corps filed a motion to dismiss or, in the alternative, for summary judgment in this appeal, which was later amended, that was the subject of our April 9, 2015 decision in *U.S. Coating I*. 15-1 BCA ¶ 35,957 at 175,705, ¶¶ 14-16. In its decision, the Board struck U.S. Coating's affirmative claims in its amended complaint and denied the remainder of the Corps' motion. *Id.* at 175,707-08.

32. On January 21, 2016, the Corps filed a renewed motion for summary judgment in this appeal. In its renewed motion for summary judgment, the Corps advanced two new theories to bar U.S. Coating's introduction of an alleged prior oral agreement to terminate the contract for convenience for the purposes of contesting the propriety of the default termination. First, it contended that U.S. Coating's allegation of a prior agreement is barred by the parol evidence rule. Second, it contended that, even if the allegation is assumed true, AUSA Usry, whose representations U.S. Coating relies upon, lacked the requisite actual authority to bind the government to such an agreement.

33. In support of its renewed motion, the Corps submitted the affidavits of CO McGuffie and AUSA Usry. CO McGuffie's affidavit stated in pertinent part:

> 2. I was the Government Procuring Contracting Officer who awarded and administered the contract (number W912EE-10-C-0019) that is the subject of this appeal.

8

3. My authority as the duly authorized Contracting Officer under the subject Contract was never delegated to or usurped by the Assistant United States Attorney who represented the Corps in the bankruptcy proceeding that involved U.S. Coating and implicated contract number W912EE-10-C-0019.

4. Because of the Contractor's actions endangering performance on the contract, I had clear justification for termination for default. Due to the significant financial and contractual ramifications a termination for convenience would have presented to the Corps and our customer, I never would have agreed to terminate the contract for convenience. The Assistant United State[s] Attorney had no authority granted to him on the subject contract. Had the Assistant United State[s] Attorney advised or recommended a termination for convenience, which he did not, I would not have entertained such a recommendation.

(*U.S Coating II*, gov't reply, ex. L (McGuffie aff., dated May 10, 2016))

34. AUSA Usry's affidavit stated in pertinent part:

2. I represented the United States Army Corps of Engineers ("the Corps") in the Chapter 11 bankruptcy proceedings that involved the Corps' contract, number W912EE-10-B-0011, with U.S. Coating Specialties & Supplies, LLC ("U.S. Coating"), the debtor . . . .

3. I had conversations with U.S. Coatings' counsel in the bankruptcy proceedings, Herb Irvin, and representatives of the debtor on multiple occasions during the course of the bankruptcy proceedings.

4. During my discussions and negotiations in the bankruptcy proceedings with debtor's counsel and debtor's representatives, I never promised anyone that the Corps would terminate the contract for convenience if U.S. Coating rejected the contract in bankruptcy.

5. During my discussions and negotiations in the bankruptcy proceedings with debtor's counsel and debtor's representatives, I never did state or otherwise imply that I had

9

any authority whatsoever to bind the Corps to terminate the contract for convenience.

(*U.S Coating II*, gov't reply, ex. M (Usry aff., dated May 9, 2016))

35. In its opposition to the Corps' renewed motion for summary judgment, U.S. Coating relied on three affidavits of its employees - President and CEO, Mr. Earl J. Washington; Ms. Velma Day; and Mr. Alden Brooks - originally submitted in the earlier *U.S. Coating I* proceedings. Mr. Washington's affidavit stated in pertinent part:

> 3. I never consented to a termination by default. I agreed to lift the automatic stay on the condition that U.S. Coating would be terminated only by convenience. I held this discussion with Travelers' legal counsel, the Respondent's legal counsel, and U.S. Coating's legal counsel, Herb Irvin, on April 24, 2012.

(*U.S Coating I*, app. opp'n, ex. A (Washington aff., dated Jan. 13, 2013))

36. On April 6, 2017, we denied the government's renewed motion for summary judgment. We held that the record was insufficient to determine whether the April 25, 2012 bankruptcy agreement was a fully integrated agreement, and that genuine issues of material fact existed regarding whether there was a separate oral agreement with the government to terminate the contract for convenience. *U.S. Coating II*, 17-1 BCA ¶ 36,710 at 178,760. We further held the AUSA possessed the necessary authority to bind the government when the parties entered into the April 25, 2012 bankruptcy settlement agreement. *Id*. at 178,761. We concluded that the Corps was not entitled to judgment as a matter of law on the factual record and that U.S. Coating should have an opportunity to fully develop the facts surrounding the parties' negotiations prior to the Bankruptcy Court settlement. *Id*.

37. On October 26, 2018, the parties agreed to the submission of the appeal on the record without a hearing pursuant to Board Rule 11 (Br. corr. ltr. dtd. November 6, 2018). On October 31, 2018, we issued a scheduling order for the submission of Rule 11 briefs and permitting appellant to take additional discovery.

38. Appellant submitted in support of its Rule 11 brief the depositions of CO McGuffie and David Townsend, a Quality Assurance Technician with the Corps, the three affidavits of its employees that it previously had submitted, and an affidavit from its counsel in the bankruptcy matter, Herbert J. Irvin (app. supp. R4, tabs 1-7).

39. The Corps submitted in support of its Rule 11 brief a variety of exhibits, including correspondence between appellant and the CO, a decision in the arbitration

between U.S. Coating and its principal subcontractor, Mid State Construction Company, Inc., and CO McGuffie's Memorandum for the Record in support of the termination for default (gov't br., exs. A-K).

40. On February 11, 2019, the parties completed briefing pursuant to Board Rule 11.

## DECISION

The threshold issue is whether appellant has demonstrated that a separate oral agreement existed requiring the government to terminate the contract for convenience. If we conclude that a separate agreement existed, then we must decide whether the CO violated that agreement when she terminated the contract for default. Alternatively, if appellant cannot demonstrate that a separate agreement existed, we must determine whether the CO's default termination was justified.

For the reasons set forth below, we conclude that appellant has not met its burden of demonstrating that the parties had entered into a separate oral agreement to terminate the contract for convenience. We further conclude that the CO reasonably exercised her discretion when she terminated the contract for default. Accordingly, we deny the appeal.

## I. Standard of Review

Board Rule 11 permits parties "to waive a hearing and to submit [their] case upon the record." The standards of review and burdens of proof of a motion for summary judgment and a decision on the merits under Board Rule 11 vary substantially. *DG21, LLC*, ASBCA No. 57980, 15-1 BCA ¶ 36,016 at 175,909 n.1. Unlike a motion for summary judgment, which must be adjudicated on the basis of a set of undisputed facts, pursuant to Board Rule 11, the Board "may make findings of fact on disputed facts." *Grumman Aerospace Corp.*, ASBCA No. 35185, 92-3 BCA ¶ 25,059 at 124,886 n.13.

The legal standards for a default termination are well established. Under the default clause, in this appeal FAR 52.249-10, DEFAULT (FIXED-PRICE CONSTRUCTION) (APR 1984), the government may terminate a contract for default when the contractor, without excuse, fails diligently to prosecute the work or fails to complete the work within the time prescribed by the contract. The government bears the burden to prove that its termination was justified. *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 765 (Fed. Cir. 1987); *New Era Contract Sales, Inc.*, ASBCA No. 56661 *et al.*, 11-1 BCA ¶ 34,738 at 171,022. If the government establishes a *prima facie* case justifying the termination, the burden shifts to the contractor to prove the default was excusable. *ADT Constr. Grp., Inc.*, ASBCA No. 55358, 13 BCA ¶ 35,307 at 173,312 (citing *Empire Energy Management Systems, Inc.*, ASBCA No. 46741, 03-1 BCA ¶ 32,079 at 158,553).

11

II. <u>Whether the Parties Had a Separate Oral Agreement that the Corps Would Terminate the Contract for Convenience</u>

In *U.S. Coating II*, we held that the parol evidence rule did not prevent U.S. Coating from introducing evidence that a separate oral agreement existed apart from the Bankruptcy Court's April 25, 2012 Agreed Order. 17-1 BCA ¶ 36,710 at 178,760. We subsequently allowed U.S. Coating to take additional discovery to support its allegation of a separate agreement (Docket No. 115).

The parties agree that there is no written agreement that the Corps would terminate the contract for convenience. Therefore, U.S. Coating must establish the existence of an implied-in-fact contract. "An implied-in-fact contract has all the requirements of an express contract except that the evidence of the meeting of the minds differs." *Safeco Ins. Co. of Am.*, 17-1 BCA ¶ 36,819 at 179,450 (citing *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003)). In order to establish an implied-in-fact contract, U.S. Coating must satisfy the following elements: (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in offer and acceptance; and (4) the existence of a government representative whose conduct is relied upon who had actual authority to bind the government in a contract. *Safeco*, 17-1 BCA ¶ 36,819 at 179,450 (quoting *Todd Pacific Shipyards Corp.*, ASBCA No. 55126, 08-2 BCA ¶ 33,891 at 167,755).

U.S. Coating offers sworn testimony of four individuals, as well as deposition testimony from CO McGuffie, to support the existence of a separate agreement to terminate the contract for convenience (finding 39). U.S. Coating contends that it reached an agreement during an oral teleconference that took place on April 24, 2012, two days before the scheduled hearing (finding 19). The participants in the call included AUSA Usry, Herbert J. Irvin, counsel for U.S. Coating in the bankruptcy action, and Mark Herbert, counsel for Travelers (finding 18). The government, in turn, relies on the sworn statement and deposition testimony of CO McGuffie and the sworn statement of AUSA Usry to support its contention that no separate agreement existed (finding 39).

A. <u>No Evidence of Mutuality of Intent</u>

The first element of an implied-in-fact contract is mutuality of intent. *Walsh Constr. Co. of Ill.*, ASBCA No. 52952, 02-2 BCA ¶ 32,024 at 158,279, *aff'd*, 80 F. App'x 679 (Fed. Cir. 2003). To show mutuality of intent, appellant must demonstrate, by objective evidence, the existence of an offer and reciprocal acceptance. *Guardian Safety & Supply LLC*, ASBCA No. 61932, 19-1 BCA ¶ 37,333 at 181,561 (citing *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003)). Once an offer is made, "acceptance of the offer must be manifested by conduct that indicates assent to the proposed bargain." *Guardian Safety*, 19-1 BCA ¶ 37,333 at 181,561 (quoting *Russell Corp. v. United States*, 537 F.2d 474, 482 (Ct. Cl. 1976)).

Prior to the phone call, the only explicit discussion of a termination for other than default was between counsel for U.S. Coating and counsel for the surety, Travelers (finding 23) (app. br. at 22-23). Travelers was not a party to the contract between the United States and U.S. Coating and, therefore, had no authority to enter into an agreement concerning the termination of the contract. *See Guardian Safety,* 19-1 BCA ¶ 37,333 at 181,561 (citing *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947) (holding contractor assumes risk of ascertaining authority of agents who purport to act for the government)). Therefore, discussions between counsel for Travelers and U.S. Coating do not establish mutual intent.

U.S. Coating's counsel, Herb Irvin, does not explicitly claim that an agreement with the government was reached during the phone call. Instead, he avers that:

> [W]e understood [AUSA] David Usry to say that the Corps would have no issue with a termination for reasons other than default, but that the Corps could not take any action until the Automatic Stay was lifted.

(Finding 22) Even if we accept Mr. Irvin's assertion that AUSA Usry stated that he "would have no issue with a termination for reasons other than default," this is well short of an agreement.

The statements of U.S. Coating's employee, Mr. Brooks, also fail to establish the existence of mutual intent. His statements indicate his subjective understanding that the government would agree to a termination for convenience:

> I believed that that there would be good-faith steps taken by Mr. Usry and the Corps to satisfactorily resolve the contract in the best manner possible.

(App. supp. R4, tab 3 at 2, ¶ 9 (Brooks aff., dated Oct 31, 2018))

Moreover, Mr. Washington's statements fail to establish mutual intent. He states in his affidavit that he "understood David Usry to say that the Corps would have no issue with a termination for reasons other than default, but that the Corps could not take any action until the Automatic Stay was lifted." (Finding 19) This understanding, assuming it is entirely factual, falls short of establishing mutual intent.

From the government's perspective, AUSA Usry's sworn statement indicates that he did not believe that he possessed the authority to agree to a termination for convenience and that a decision on termination would need to occur after the bankruptcy stay was lifted (finding 34). Even if AUSA Usry was mistaken about whether he possessed authority to enter into an agreement to terminate the contract, his subjective

belief at the time would have made it impossible for him to possess the requisite intent to reach a binding agreement. Therefore, it was not possible for him to have a meeting of the minds with counsel for U.S. Coating. *See Man & Machine, Inc.*, ASBCA No. 61608, 19-1 BCA ¶ 37,401 at 181,812 (mutual intent cannot be inferred when government official does not hold himself out as possessing authority to bind government).

Taken together, these statements fall well short of mutual intent. A contractor's subjective understanding that the government would agree is not sufficient to establish a meeting of the minds. *See Engineering Solutions & Products, LLC*, ASBCA No. 58633, 17-1 BCA ¶ 36,822 at 179,466 (holding that contractor's unilateral "understanding" is not sufficient to establish a mutuality of intent).

## B. Existence of Offer and Acceptance is Ambiguous

Moreover, the record is ambiguous – at best – concerning the existence of an offer and acceptance. To satisfy its burden, U.S. Coating must show, by objective evidence, the existence of an offer and reciprocal acceptance. *Anderson*, 344 F.3d at 1353; *Yonir Technologies Inc.*, ASBCA No. 56736, 10-1 BCA ¶ 34,417 at 169,897. In this situation, the precatory statements of U.S. Coating's representatives are not sufficient to demonstrate the existence of an agreement to terminate the contract for convenience.

The sworn statements of the individuals representing U.S. Coating are consistent in stating that U.S. Coating wanted a termination for convenience. As we previously observed, it is hard to imagine why U.S. Coating would agree to settle the bankruptcy litigation in exchange for a termination for default. *U.S. Coating II*, 17-1 BCA ¶ 36,710 at 178,760. Indeed, U.S. Coating's president, Earl Washington, stated in his affidavit that his agreement to the bankruptcy order was based on his understanding that such an order was necessary to proceed with negotiations with the Corps to allow the addition of the subcontractor to assist U.S. Coating in completing the contract. *U.S. Coating I*, 15-1 BCA ¶ 35,957 at 175,705 (citing R4, tab 20 at 23-30).

However, the subjective beliefs of U.S. Coating's representatives are not sufficient to establish the existence of an offer and acceptance. The subjective unexpressed intent of one of the parties is irrelevant to contract interpretation. *Altanmia Commercial Marketing Co.*, ASBCA No. 55393, 09-1 BCA ¶ 34,095 at 168,585 (citing *Andersen Consulting v. United States*, 959 F.2d 929, 934 (Fed. Cir. 1992)). It will not bind the other party, especially when the latter reasonably believes otherwise. *See Firestone Tire & Rubber Co. v. United States*, 444 F.2d 547, 551 (Ct. Cl. 1971).

Finally, AUSA Usry unequivocally states in his sworn statement that he did not agree to a termination for convenience and that a decision on termination would need to occur after the bankruptcy stay was lifted. Specifically, Mr. Usry averred that he "never promised anyone that the Corps would terminate the contract for convenience if U.S.

14

Coating rejected the contract in bankruptcy." (Finding 34)  We find Mr. Usry's statement to be credible and consistent with the other evidence.

In summary, U.S. Coating has failed to demonstrate the existence of an implied-in-fact contract to terminate the contract for convenience.

III.  Whether the CO Abused her Discretion by Terminating the Contract for Default

In the absence of an agreement between the parties that the contract would be terminated for convenience, the remaining issue is whether the contracting officer abused her discretion by terminating the contract for default.

In *U.S. Coating I*, we held that rejection in bankruptcy is not, by itself, tantamount to anticipatory repudiation.  15-1 BCA ¶ 35,957 at 175,707 (citations omitted) (holding that rejection and termination are distinct concepts).  We further held that U.S. Coating consented to the bankruptcy order rejecting the contract and thus communicated to the Corps that it was freeing itself from the obligation to perform under the contract.  *Id.*  We held open the possibility that if appellant could prove the existence of an agreement to terminate the contract for convenience, it may be able to demonstrate that the CO improperly exercised her discretion when terminating the contract for default.  *Id.* at 175,708; *see The Ryan Co.*, ASBCA No. 48151, 00-2 BCA ¶ 31,094 at 153,543, *recon. denied*, 01-1 BCA ¶ 31,151 (holding that "the default clause does not require the Government to terminate on a finding of a bare default but merely gives the agency the discretion to do so.").  However, as we discussed above, we conclude that U.S. Coating has not demonstrated the existence of an agreement to terminate the contract for convenience.

A.  Government Has Demonstrated *Prima Facie* Grounds for Default Termination

The only remaining question, therefore, is whether the rejection of the contract in bankruptcy, coupled with non-performance, was a reasonable basis for termination.  The government bears the burden of proof with respect to whether the default termination was justified.  *Lisbon*, 828 F.2d at 765.  The default provision "require[s] reasonable belief on the part of the contracting officer that there was no reasonable likelihood that the contractor could perform the entire contract effort within the time remaining for contract performance."  *McDonnell Douglas Corp. v. United States*, 323 F.3d 1006, 1016 (quoting *Lisbon*, 828 F.2d at 765).

U.S. Coating's decision to reject the contract in bankruptcy, considered alone, is sufficient to establish *prima facie* grounds for default termination.  The bankruptcy

15

statute states that the rejection in bankruptcy of a contract is a breach of that contract:

> Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease

11 U.S.C. § 365(g) (2005).

As we previously explained, rejection of a contract in bankruptcy "frees the estate from the obligation to perform under the contract." *U.S. Coating I*, 15-1 BCA ¶ 35,957 at 175,707 (quoting *Lewis Bros. Bakeries Inc. & Chi. Baking Co. v. Interstate Brands Corp.*, 751 F.3d 955, 961 (8th Cir. 2014)). Moreover, in *Thomas & Sons Building Contractors, Inc.*, we concluded that a contractor's rejection of a contract in bankruptcy was sufficient to justify the government's termination for default. ASBCA No. 53395, 05-2 BCA ¶ 33,083 at 163,989-90.

However, as we held in *U.S. Coating I*, the default clause does not *require* the CO to terminate upon a finding of bare default, but gives the CO discretion to do so. Indeed, the CO's exercise of that discretion must be fair and reasonable and not arbitrary and capricious. *U.S. Coating I*, 15-1 BCA ¶ 35,957 at 175,708 (citations omitted).

We conclude that the CO reasonably exercised her discretion in terminating the contract for default. The CO's memorandum for the record, dated May 7, 2012, provides support for her termination decision based upon U.S. Coating's failure to make reasonable progress on critical path items. In particular, CO McGuffie noted that U.S. Coating's schedule updates from December 2011 through April 2012 showed little or no progress on critical path items. During that time frame, U.S. Coating reported negative float that increased from 69 days to 185 days. Although CO McGuffie sought an explanation for the delay, U.S. Coating did not respond to her multiple letters. Moreover, U.S. Coating admitted that it would not complete performance by the June 30, 2012 completion date. Finally, U.S. Coating provided CO McGuffie with no indication that it had a viable plan to halt slippage and regain the lost time. (Finding 28) In her affidavit, CO McGuffie reiterated her position regarding default, averring that "[b]ecause of the Contractor's actions endangering performance on the contract, I had clear justification for termination for default." (Finding 33)

U.S. Coating offers no specific facts to refute the CO's assertions. The CO's memorandum for the record offers a contemporaneous account of the facts that supported her decision and is consistent with her subsequent sworn statement in her affidavit. As stated in Board Rule 11, "Submission of a case without hearing does not relieve the parties from the necessity of proving the facts supporting their allegations or defenses."

We conclude that the government has demonstrated a *prima facie* basis for the termination for default.

### B. U.S. Coating Has Not Demonstrated That Default Was Excusable

Having concluded that the government has demonstrated a *prima facie* basis for the default termination, the burden shifts to the contractor to demonstrate that its default was excusable. *Truckla Services, Inc.*, ASBCA Nos. 57564, 57752, 17-1 BCA ¶ 36,638 at 178,445 (citing *ADT Constr. Grp.*, 13 BCA ¶ 35,307 at 173,312). Here, U.S. Coating contends that the default was excusable because it resulted from the non-foreseeable circumstance of its primary subcontractor, Mid-State Construction, walking off the job and bringing a dispute against U.S. Coating that subsequently required U.S. Coating to file bankruptcy protection under Chapter 11 (app. br. at 1, 17-19).

U.S. Coating asserts, without evidence, that "Mid-State Construction walked off the job and brought a dispute against U.S. Coating in an effort to undermine U.S. Coating and to take over the contract U.S. Coating had in place with the Corps" (app. br. at 17). The government, in turn, presents uncontroverted evidence that Mid-State walked off the job because U.S. Coating had not paid Mid-State for its work on the project. The Corps points to the November 22, 2011, arbitration award against U.S. Coating, in which the arbitrator found that U.S. Coating had materially breached the contract between it and Mid-State for failure to pay Mid-State, stating that U.S. Coating had "offered no valid explanation as to why [Mid-State]" was not paid (finding 9).

U.S. Coating has offered no new facts to refute these assertions, nor do we see any reason to disturb the arbitrator's findings. Further, U.S. Coating has offered no evidence that Mid-State's decision to walk off the job was due to an unforeseeable event. Instead, the evidence demonstrates that it walked off the job because it was not being paid (finding 9). *See Bichler Co.*, ASBCA No. 30680, 89-1 BCA ¶ 21,320 at 107,511 (upholding termination for default against prime contractor based on subcontractor's delay). Appellant's failure to pay Mid-State was the cause of job disruption and Mid-State provided notice to U.S. Coating that Mid-State would stop working on the contract unless it was paid (gov't br., ex. A at 5).

U.S. Coating further contends that termination for default was not justified, because the Corps materially breached the contract when the CO repeatedly refused to meet with Mr. Washington to resolve issues regarding the replacement subcontractor (app. br. at 19-21). According to U.S. Coating, it arranged for a new subcontractor, MTNT, to take over the contract after Mid-State Construction walked off the job (finding 15). U.S. Coating wrote to the CO to arrange a meeting to discuss continuing the contract using MTNT, but the CO refused to meet (finding 15). U.S. Coating contends, without evidence, that the CO "did not want U.S. Coating to continue and complete the contract" (app. br. at 19).

17

In her April 4, 2012 letter, CO McGuffie explained why she refused to meet. She said that, despite her numerous requests, U.S. Coating had not provided her with sufficient information about the exact contractual relationship it intended. She explained that FAR 49.402-4, Procedures in lieu of Termination for Default, allows a contractor to "continue performance of the contract by means of a subcontract or other business arrangement with an acceptable third party, provided the rights of the Government are adequately preserved." FAR 49.402-4(b). According to CO McGuffie, U.S. Coating provided her no assurances that its current bonding company consented to the assignment of the contract to MTNT and that, without such assurances, the government's rights would not be adequately protected. (Finding 16)

We conclude that the CO was justified in her reluctance to meet with U.S. Coating without first receiving adequate assurances that U.S. Coating's bonding company supported MTNT's assumption of the contract. We further conclude that U.S. Coating has not carried its burden of proving that the default was excusable.

### C. U.S. Coating Has Not Demonstrated That Corps Acted in Bad Faith

U.S. Coating contends that the Corps acted in bad faith when it terminated the contract for default the day after the Agreed Order was filed. U.S. Coating presents its bad faith argument as an exception to the parol evidence rule to persuade us to allow consideration of the parties' April 24, 2012 phone conversation during which the parties allegedly agreed that the contract would be terminated for convenience (app. br. at 16-17). Because we previously held that the parol evidence rule did not prevent U.S. Coating from introducing evidence regarding a separate oral agreement, there is no need for us to decide whether the government acted in bad faith in order to consider the April 24, 2012 phone conversation. *U.S. Coating II*, 17-1 BCA ¶ 36,710 at 178,760.

U.S. Coating additionally argues that the CO, Ms. McGuffie, acted in bad faith when she "completely ignored the agreement reached between Earl Washington and the AUSA" (app. reply. br. at 2).

Government officials are presumed to act in good faith. *Puget Sound Environmental Corp.*, ASBCA No. 58828, 16-1 BCA ¶ 36,435 at 177,597 (citing *Road and Highway Builders, LLC v. United States*, 702 F.3d 1365, 1368 (Fed. Cir. 2012)). To prove that a government official acted in bad faith, a contractor "must show a 'specific intent to injure'" by clear and convincing evidence. *Road and Highway Builders*, 702 F.3d at 1369 (quoting *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1240 (Fed. Cir. 2002)).

Here, U.S. Coating has offered no specific evidence to overcome the presumption that government officials acted in good faith. Other than Mr. Washington's sworn

statement expressing his surprise that the Corps terminated the contract for default the day after the Agreed Order was signed (finding 27), U.S. Coating offers no testimony, correspondence, or other evidence that any government official intended to deceive U.S. Coating or otherwise negotiated in bad faith.

In his sworn statement, U.S. Coating's counsel, Mr. Irvin, stated "that either everyone on our end of the conference call . . . must have misunderstood what David Usry said, or the Corps was not acting in good faith during the negotiations" (finding 23). Although Mr. Irvin implies that the Corps was not acting in good faith, this statement is a conclusory allegation and offers no evidence of specific intent. *Sia Construction, Inc.*, ASBCA No. 57693, 14-1 BCA ¶ 35,762 at 174,987 (appellant "must do more than merely allude to bad faith by contracting officials" to overcome the presumption).

Moreover, as we previously discussed, U.S. Coating's own affidavits fall short of stating that the Corps specifically agreed to terminate the contract for convenience. In the absence of an agreement, we cannot conclude that the CO acted in bad faith when she terminated the contract for default.

IV. Whether the Doctrine of *Res Judicata* Precludes Appellant from Re-Litigating Issues Decided by the Bankruptcy Court

The government contends that the doctrine of *res judicata* bars consideration of whether the government induced appellant to reject the contract before the Bankruptcy Court. According to the government, the Bankruptcy Court previously considered this issue in its May 17, 2012 hearing and appellant is barred from raising it again before the Board (gov't br. at 22).

The government did not raise this argument in its January 21, 2016 renewed motion for summary judgment. There, the government argued that the April 25, 2012 Agreed Order was an integrated agreement and that the parole evidence rule barred the Board from considering whether a separate contrary agreement existed. We held that the parol evidence rule did not prevent U.S. Coating from introducing evidence that a separate oral agreement existed apart from the Bankruptcy Court's Agreed Order. *U.S. Coating II*, 17-1 BCA ¶ 36,710 at 178,760.

In light of our conclusion that the parties did not have an implied-in-fact contract to terminate the contract for convenience, we need not consider whether *res judicata* bars U.S. Coating from re-litigating whether the government induced U.S. Coating to reject the contract before the Bankruptcy Court.

## CONCLUSION

For these reasons, we deny the appeal.

Dated:  September 28, 2020

KENNETH D. WOODROW
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Order of Dismissal of the Armed Services Board of Contract Appeals in ASBCA No. 58245, Appeal of U.S. Coating Specialties & Supplies, LLC, rendered in conformance with the Board's Charter.

Dated:  September 29, 2020

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

20