ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Intellicheck, Inc. | ) ASBCA No. 61709 |
| | ) |
| Under Contract No. 000000-00-0-0000 | ) |

APPEARANCE FOR THE APPELLANT:  William A. Shook, Esq.
  The Law Offices of William A. Shook PLLC
  Washington, DC

APPEARANCES FOR THE GOVERNMENT:  Craig D. Jensen, Esq.
  Navy Chief Trial Attorney
 Toya M. McLendon, Esq.
  Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE PAUL
ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

Pending before the Board are cross-motions for summary judgment. The dispute involves an alleged implied-in-fact contract between the parties. Intellicheck, Inc. (Intellicheck or appellant) served as a subcontractor on a Navy task order. Following completion of the task order, Intellicheck asserts that it formed an implied-in-fact contract with the Navy to store and maintain certain property used in the task order until provided disposal instructions. Because we conclude that Intellicheck failed to establish the existence of an implied-in-fact contract, we grant summary judgment in favor of the Navy.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTIONS

1. On May 31, 2005, the Navy awarded a multiple award contract vehicle to The Analysis Group, LLC (TAG) under Contract No. N00178-05-D-4617 (R4, tab 1 at 1, 8). On September 9, 2011, the Navy awarded TAG Task Order FD01 under the contract (R4, tab 2 at 57). TAG is a wholly-owned subsidiary of The KEYW Corporation (KEYW) (R4, tab 8a at 116). On September 9, 2011, KEYW entered into a subcontract with Intellicheck. The agreement provided that Intellicheck would perform as a subcontractor to TAG on Task Order FD01. (R4, tab 8c at 152)

2. Intellicheck previously served as the primary contractor on Navy Contract No. N00167-06-C-0005. This initial contract was for the development of a Floating Area Network Littoral Sensor Grid (FAN LSG). The FAN LSG was composed of a series of floating sensorized buoys developed for over-water wireless networking capabilities for ship to ship connectivity. (R4, tab 2 at 59; gov't mot. at 2; app. mot. at 2)

3. Task Order FD01 was awarded to TAG "teaming with Intellicheck . . . as a subcontractor" (R4, tab 8a at 116). It was for engineering and technical support, focusing on system integration, testing, demonstration and certification/qualification of the FAN LSG system (R4, tab 2 at 59). It also stated that the "LSG system developed/fabricated is Government property and the disposition of the LSG system will be provided by the Navy upon completion of [the] task order" (R4, tab 2 at 61). The task order was completed on September 6, 2012, six months ahead of the period of performance end date (R4, tab 2 at 66, tab 8a at 118).

4. From October 2012 to September 2013 there were a series of emails between the Navy, the Defense Contract Management Agency (DCMA), KEYW/TAG, and Intellicheck regarding property management procedures and disposal of the FAN LSG buoys (see R4, tabs 3-7). Despite this communication, the property remained in Intellicheck's possession.

5. In August 2013, TAG submitted to the Navy an invoice for services and costs incurred by Intellicheck. The invoice included Intellicheck's storage costs at that point in time. The government paid the invoice. (Compl. ¶ 10; answer ¶ 10)

6. On September 23, 2013, TAG filed a certified claim for incurred additional labor costs (R4, tab 8a at 116). The contracting officer (CO) denied TAG's claim on December 19, 2013 (R4, tab 8a). On March 17, 2014, TAG appealed the denial of its claim (R4, tab 8). The Board docketed the appeal as ASBCA No. 59221. On August 22, 2014, TAG and the Navy executed a release and settlement of all claims. (R4, tabs 9, 11 at 229) The release stated that "this Settlement Agreement also covers any and all costs of any kind to which Intellicheck Mobilisa or any other subcontractors or entity may be entitled to for any work related to the claim, whether known or unknown, as set forth in ASBCA No. 59221" (R4, tab 9 at 225).

7. On April 21, 2015, Intellicheck's Chief Financial Officer (CFO) contacted the Navy via email to inform them that Intellicheck was still in possession of property under the aforementioned contracts. The email stated, "We continue to store [N]avy property relating to two Navy contracts for the Buoy system; a Navy direct contract [N00167-06-C-0005], as well as our subcontract with KeyW [N00178-05-D-4617-FD01]. Would you please advise what you would like us to do with this property?" (R4, tab 12 at 253)

2

8.  After a series of emails between the Navy, DCMA, KEYW/TAG, and Intellicheck, the government provided final disposal instructions for the property in Intellicheck's possession.  On December 28, 2015, Intellicheck released the last of the property in its possession.  (R4, tabs 12-14, 15C-F)

9.  On September 6, 2016, Intellicheck submitted a certified claim to the contracting officer in the amount of $129,181.03.  Intellicheck's claim was for the "costs associated with the storage, maintenance and disposal of the Navy systems."  It stated that "the Navy systems include very large marine buoys that had to be stored in rented space and required ongoing maintenance."  (R4, tab 15 at 258-59)  The claimed storage costs dated back to August 22, 2014 (R4, tab 15G at 274), which was the date that the Navy and TAG executed their settlement agreement in ASBCA No. 59221.  The claim also included "additional labor and consulting costs in order to comply with the Government [disposal] direction."  Finally, the claim asserted that these costs stemmed from an implied-in-fact contract between Intellicheck and the Navy.  (R4, tab 15 at 258)

10.  On June 25, 2018, the CO denied Intellicheck's claim.  The CO's final decision (COFD) concluded that Intellicheck's claim was precluded by the settlement agreement between TAG and the Navy; that Intellicheck, as a subcontractor on Task Order FD01, did not have standing to bring a claim under the contract; and that Intellicheck failed to establish the existence of an implied-in-fact contract with the Navy. (R4, tab 19)

11.  On July 18, 2018, Intellicheck appealed the denial of its claim, which the Board docketed as ASBCA No. 61709.

DECISION

The parties initially elected to have this appeal processed by submission without a hearing pursuant to Board Rule 11.  However, when their individual Rule 11 opening briefs were due, the parties filed cross-motions for summary judgement.  The parties also filed individual responses in opposition to the opposing parties' motion for summary judgment.

*I.  Standard of Review*

The standards of review and burdens of proof of a motion for summary judgment and a decision on the merits under Board Rule 11 vary substantially.  *Reed Int'l, Inc.*, ASBCA No. 61451 *et al.*, 20-1 BCA ¶ 37,587 at 182,513 (citing *DG21, LLC*, ASBCA No. 57980, 15-1 BCA ¶ 36,016 at 175,909 n.1).  We evaluate cross-motions for summary judgment under the well-settled standard:  "Summary judgment is properly granted only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  The moving party bears the burden of establishing the absence of any

genuine issue of material fact and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment." *Mingus Constructors, Inc. v. United States*, 812F.2d 1387, 1390 (Fed. Cir. 1987) (citations omitted). A material fact is one that may affect the outcome of the decision. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "To ward off summary judgment, the non-moving party must do more than make mere allegations; it must assert facts sufficient to show a dispute of material fact." *New Iraq Ahd Co.*, ASBCA No. 59304, 15-1 BCA ¶ 35,849 at 175,291 (citing *Mingus*, 812 F.2d at 1390-91).

## II. Appellant's Motion for Summary Judgment

Appellant argues that it had an implied-in-fact contract with the government to maintain and store government property pending receipt of disposal instructions. It argues that the prior settlement agreement between the Navy and TAG does not preclude its claim because the settlement agreement related only to the request to realign funds and did not address storage costs. Finally, appellant maintains that its implied-in-fact contract is not precluded by an express contract because the express contract is between the Navy and TAG, not Intellicheck.

## III. The Government's Cross-Motion for Summary Judgment

First, the government asserts that appellant does not have privity of contract with the government to bring its claim. Next, it argues that there was no implied-in-fact contract with appellant and that, even if there was an implied-in-fact contract, it was precluded by an express contract between the Navy and TAG. Finally, the government argues that the claim is precluded by the settlement agreement.

## IV. Implied-in-fact Contracts

The material facts are not in dispute, making this appeal ripe for decision on summary judgment. The principal legal dispute is whether there was an implied-in-fact contract between the parties for the storage, maintenance, and disposal of the property used in Task Order FD01. Because we find that the parties did not have an implied-in-fact contract, we grant summary judgment in favor of the Navy.

An implied-in-fact contract is "founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *City of Cincinnati v. United States*, 153, F.3d 1375, 1377 (Fed. Cir. 1998) (quoting *Baltimore & Ohio R.R. Co. v. United States*, 261 U.S. 592, 597 (1923)). The elements of an implied-in-fact contract are the same as for an express contract. *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003). It requires proof of "(1) mutuality of intent, (2) consideration, (3) an unambiguous offer and acceptance, and (4) 'actual

authority' on the part of the government's representative to bind the government in contract." *Id.*

Appellant's motion identifies two offers and acceptance forming the alleged implied-in-fact contract. We will address both in turn. First, appellant argues that the Navy initially offered through TAG the use of government property for performance of Task Order FD01. Appellant maintains that it accepted the offer expecting to receive disposal instructions upon completion of the task order. (App. mot. at 9) This initial offer and acceptance identified by appellant cannot be reasonably viewed as forming an implied-in-fact contract between the Navy and Intellicheck. Rather, the offer identified by appellant was part of the express contract – Task Order FD01 – between the Navy and TAG. While the task order was awarded to TAG "teaming with Intellicheck . . . as a subcontractor" (SOF ¶ 3), the parties in privity of contract were the Navy and TAG, not Intellicheck. Notably, the task order did state that upon competition the Navy would provide disposal instructions for the government property (SOF ¶ 3). However, this was a term of the express contract between the Navy and TAG. Appellant would have us believe that by entering into a contract with TAG, the Navy was also entering into an implied-in-fact contract with TAG's subcontractor. We disagree.

Next, appellant argues that after the task order was completed, appellant "by its actions, offered to continue to maintain and store the Navy-owned equipment consistent with general Government requirements pending receipt of Government disposal instructions." Appellant argues that after the task order was closed, "the Navy, through its actions of not providing timely disposal instructions, accepted [appellant's] offer to continue to properly maintain and store the Navy-owned equipment pending final Government disposal instructions." (App. mot. at 9-10)

Again, we do not agree. An implied-in-fact contract must include mutuality of intent, and an unambiguous offer and acceptance. In order to establish mutuality of intent, appellant must show, by objective evidence, the existence of an offer and acceptance. *Guardian Safety & Supply LLC d/b/a Enviro Safety Products*, ASBCA No. 61932, 19-1 BCA ¶ 37,333 at 181,561 (citing *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003)). Once an offer is made, "acceptance of the offer [must] be manifested by conduct that indicates assent to the proposed bargain." *Guardian Safety & Supply*, 19-1 BCA ¶37,333 at 181,561 (quoting *Northrop Grumman Sys. Corp. Space Sys. Div.*, ASBCA No. 54774, 10-2 BCA ¶ 34,517 at 170,237).

Appellant's argument rests on the idea that the parties' apparent inaction created a new contract, separate and apart from the Navy's contract with TAG. The task order was completed on September 6, 2012 (SOF ¶ 3). Thereafter, from October 2012 to September 2013, there was some email exchange between the Navy, DCMA, KEYW/TAG, and Intellicheck regarding property management procedures (SOF ¶ 4). It is not clear why the property was not disposed of at that time. Instead, the parties' focus

5

appears to have shifted to the claim filed by TAG. An affidavit from appellant's CFO, submitted as an exhibit to its motion, states that from September 2013 to August 2014, appellant focused on supporting TAG's claim against the Navy (app. mot., ex. A-1 at 2 ¶ 13). TAG's claim was settled on August 22, 2014 (SOF ¶ 6). Thereafter, from September 2014 to April 2015, appellant focused on a leadership change to a new Chief Executive Officer (app. mot., ex. A-1 at 2 ¶ 15). It was in April 2015 that appellant contacted the Navy again about the property still in its possession (SOF ¶ 7). Appellant has not identified any communication with the Navy that could serve as the basis of the alleged implied-in-fact contract. Rather, after the settlement agreement with TAG was finalized and the task order was closed out, the Navy and Intellicheck continued to maintain the same status quo with respect to the property that there was under the task order. Appellant argues that apparent inaction on the part of the Navy to provide final disposal instructions created an implied-in-fact contract between the parties. Under these circumstances, we fail to see how the conduct of the parties could establish a new contract.

Appellant notes that in August 2013, Navy contracting officials approved and authorized the payment of appellant's storage costs up to that point in time (SOF ¶ 5). Appellant argues that this establishes that the Navy's contracting officials knew that appellant remained in possession of the equipment, knew that its storage costs were ongoing, and that there were no disposal instructions provided until December 2015 (app. mot. at 10-11). To appellant's credit, this does appear to establish that Navy officials knew appellant was in possession of this equipment and incurring storage costs. We could also infer that by paying the invoice in August 2013, the Navy believed the storage costs were legitimate. However, crucially for purposes of our analysis, these costs were paid pursuant to the task order that the Navy had with TAG. The costs were not paid as part of an implied-in-fact contract. Paying the invoiced storage costs under the task order does not mean that the Navy was tacitly agreeing to enter into a separate implied-in-fact contract with appellant.

Furthermore, appellant initially seeking and actually being paid for its storage costs via an invoice submitted under the task order shows that appellant believed these costs fell within the realm of the task order, and not a separate implied-in-fact contract. The questions relating to the ongoing storage costs and disposal of the property should have been addressed before executing the August 2014 settlement agreement and before the task order was closed out.

Having determined that appellant failed to establish the existence of an implied-in-fact contract, we need not consider the scope of the settlement agreement between the Navy and TAG and whether these costs can be brought as a sponsored claim under the task order.

6

<u>CONCLUSION</u>

For the reasons stated above, appellant's motion for summary judgment is denied. The government's cross-motion for summary judgment is granted and the appeal is denied.

Dated:  June 24, 2021

MICHAEL T. PAUL
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61709, Appeal of Intellicheck, Inc., rendered in conformance with the Board's Charter.

Dated: June 24, 2021

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals